Betty Yates VAN SKIKE, Appellant,

v.

The STATE of Texas, Appellee.

No. 37678.

Court of Criminal Appeals of Texas.

Feb. 10, 1965.

Rehearing Denied April 7, 1965.

Bill Schlomann, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, W. Louis White and Daniel P. Ryan, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, 10 years.

Alice Killingsworth, who had resided immediately next door to appellant for a short time, but did not know her, testified that she was awakened about midnight on the night in question by noises coming from appellant's home, that she heard male and female voices and that she then heard a shot fired. She stated that shortly thereafter she heard an automobile drive up and a man's voice say "at least he's not dead", and that it was an hour or an hour and one-half later that the police and ambulance arrived.

Officer Reed testified that he received a call at 1:51 a. m. on the morning in question, proceeded to appellant's house, found a man's body in the garage, knocked on the door and was admitted by appellant, who in answer to his question as to what the trouble was, replied "she had shot Johnnie Mead" and "he's out in the garage" and then took him inside where she pointed to a pistol on the kitchen table. Seated at the table were Mr. and Mrs. Cauley smoking cigarettes. He testified that Homicide Detective Rockwell arrived shortly thereafter.

Officer Rockwell testified that he arrived upon the scene, checked the body, found it to be cold with no "pulse", took appellant in custody and shortly thereafter, after having been duly warned, appellant made a written statement. Parts of this statement were introduced by the State over the sole objection that the proper predicate had not been laid for its introduction. Appellant then introduced the previously deleted portions thereof. Both portions will be summarized together.

The confession recited that appellant was separated from her husband and had known Johnnie Mead for more than two years and had been going with him, but that their relationship had not been entirely harmonious, and that Johnnie had on one occasion kicked her in the head, causing an injury for which she was hospitalized. It further recited that on the afternoon of the day in question she had met Johnnie at a tavern and had an argument with him and they had separated, that she and the Cauleys went to her home from a tavern at midnight and that shortly thereafter Johnnie Mead called and wanted to come over, but that she told him she did not want him to come. It further stated that shortly after the call Johnnie arrived in a taxi and the Cauleys left because Johnnie was drunk and offensive, and as they were leaving Johnnie forceably restrained her momentarily, but that when she told him to go to the automobile and tell the Cauleys goodbye, he left her and went in that direction. It recites that she then went in her house to get her gun because she was scared of Johnnie "with them gone", and then went back into the garage where she again saw Johnnie and told him not to touch her again, but that he started toward her with his hands outstretched, not saying

a word, and that she shot him. After this she called the Cauleys who returned and after much dissuasion convinced her not to kill herself and "some considerable time later after talking more and my going out to check further on Johnnie and after my mind was made up that he was dead we all decided to call for an ambulance and the Police * * *."

No weapon was found on or about the deceased's body.

Appellant called Mr. and Mrs. Cauley and they testified of Johnnie's arrival, his disorderly conduct, their departure, appellant's call, their return and their efforts to calm appellant, who at first voiced the intention of killing herself and later agreed to call the police. Their testimony differed only in that Mr. Cauley stated that he saw Johnnie assault appellant as he and his wife were leaving, and he estimated that it took them an hour to get appellant into the house before the police were called. Mrs. Cauley testified she did not see the assault and estimated that it took them about five minutes to get appellant into the house. She denied that she and her husband sat in the kitchen and discussed what they were going to tell the police, but said they had to calm appellant down before they called.

The witness Lesser testified that in the afternoon of the day in question Johnnie had come into his place of business intoxicated and that appellant suggested that they leave as she did not want to argue inside. The witness Ruby Register corroborated Lesser's testimony.

Appellant testifying in her own behalf admitted signing the confession but stated that Officer Rockwell helped her make it. She recounted that she had gone with Johnnie off and on for a year and a half, but stated that she did not love him because "he was a drunk, an alcoholic". She detailed fully Johnnie's prior assault upon her which sent her to the hospital but admitted that she had asked that the charges against him be dismissed and ad-

mitted that Johnnie had spent the night in her home on one occasion. She detailed the altercation with Johnnie in the afternoon at the establishment where she was drinking beer, his telephone call to her home after midnight and his subsequent arrival. She stated that as the Cauleys were leaving Johnnie twisted her arm, put his arm around her neck and momentarily cut off her breath, but that he released her and she thought he had left, that she got her son's pistol not knowing it was loaded, and upon Johnnie's return pointed it at him and pulled the trigger because he kept coming toward her not saying a word and that he fell to the ground where he remained motionless. She explained the delay in calling for an ambulance by stating that she did not believe that Johnnie was dead "and when they (the Cauleys) convinced me he was dead we called the police." She admitted on cross examination that while the police were enroute to her house she went out to her barbeque pit in her back yard and burned a picture of herself and her girl friend's husband.

The jury resolved the issue of self defense against appellant and we find the evidence sufficient to support the conviction and shall discuss the contentions advanced by brief and in argument.

■ Appellant first contends that the court erred in declining to admit a purported record of Jefferson Davis Hospital which shows that some unidentified "out patient" was treated at that institution for a laceration of the scalp and bears the notation "kicked in the head by Johnny Mead", which appellant had in her possession while on the witness stand. No effort was made to show the authenticity of this record and the court did not err in declining to admit it.

■ Her second contention is that the prosecutor committed reversible error when he asked appellant the following question: "As a matter of fact you shot Ralph Coster, didn't you * * *." The

question was not answered and appellant's general objection was sustained and the jury was instructed not to consider the question. Appellant asked for no further relief from the court. In the recent case of Matlock v. State, Tex.Cr.App., 373 S.W. 2d 237, we said:

"In the recent case of Baker v. State, Tex.Cr.App., 368 S.W.2d 627, we quoted from Bearden v. State, 169 Tex.Cr.R. 437, 334 S.W.2d 447, and said: 'The court ruled favorably to the appellant on his objection. After his objection was sustained he appears to have been satisfied because he asked the court for no further relief. Appellant is in no position to complain of said statement. 5 Tex.Jr. (2) 61, Sec. 39; Martin v. State, 157 Tex.Cr.R. 210, 248 S.W.2d 126; Earwood v. State, 161 Tex.Cr.R. 171, 275 S.W.2d 652; Pruitt v. State, 164 Tex.Cr.R. 340, 299 S.W.2d 148.' "

■ She next contends that reversible error is reflected by the following argument of the prosecutor:

"Please do not consider this case any less serious because it was tried in one day. There were, as you recall, a number of witnesses and at the time the offense occurred there were very few people present and it was not necessary, naturally, to bring you several witnesses to tell you what happened at 1219 Niagara. I think you could tell from the officers' testimony that they were concerned about what happened at 1219 Niagara. I think you could tell during the trial that we were concerned about what happened at 1219 Niagara, that we were concerned and the Grand Jury was concerned—"

Appellant's general objection was sustained and the jury was instructed not to consider "that statement". In Sparks v. State, 161 Tex.Cr.R. 100, 275 S.W.2d 494, we had before us very similar argument.

There we said that the argument "the witness Rouse, the officers, the grand jury and the court, had done their duty and it was up to the jury to do its duty" was "no more than a statement that those connected with the case had done their duty and it was up to the jury to do its duty", and did not constitute reversible error.

We need not discuss appellant's objection to the court's charge as no objections were leveled thereto at the trial and the same is not fundamentally erroneous.

Her fifth point relates to argument. It is apparent from this record that it was the State's theory that at least Mrs. Cauley, if not both of them, were present at the time the fatal shot was fired, and there was some evidence from the witness Killingsworth to support such theory. They both, however, as is shown above, denied that they saw the shooting. In his argument the prosecutor said:

"There's no doubt in my mind, and if you haven't figured it out, Mrs. Cauley was there when this murder occurred. * * *"

■ Appellant's objection that the same constituted unsworn testimony was overruled. We have concluded that this was nothing more than an expression of the prosecutor's opinion from the evidence which had been introduced, and therefore does not constitute reversible error under the well established rule set forth in Vineyard v. State, 96 Tex.Cr.R. 401, 257 S.W. 548, which has been cited with approval many times through the years.

Her final complaint is to the following argument: "Any number of witnesses took the stand and not one said this defendant was a good citizen and her reputation for being. * * *" This argument was interrupted by an objection and was not completed. It is practically the same argument quoted in our opinion in Scarborough v. State, 171 Tex.Cr.R. 83, 344 S.W.2d 886, where, as here, an application for suspend-

ed sentence had been filed and proof had been made that appellant was eligible therefor under the law.

Finding no reversible error, the judgment is affirmed.