John Gasper RAMOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 40393.

Court of Criminal Appeals of Texas.

Oct. 18, 1967.

Rehearing Denied Dec. 6, 1967.

Clyde W. Woody (on appeal), Marian S. Rosen (on appeal), William M. LauBach (on appeal), Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Gerald Applewhite, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

This is an appeal from a conviction for murder without malice under the provisions of Article 802c, Vernon's Ann.P.C.; the punishment assessed by the jury, four (4) years confinement in the Texas Department of Corrections.

The deceased, Fred Peebles, was an off-duty, uniformed Harris County deputy sheriff, escorting a funeral procession when he died on the afternoon of September 23, 1965. He was standing astride his motorcycle directing traffic as the funeral procession passed onto the Eastex Freeway in Harris County, Texas when an automobile driven by appellant entered the feeder lane (an incline onto the freeway), hit the motorcycle and the deceased, dragged the motorcycle and deceased 277 feet, struck the freeway median railing, and came to a stop. There were no skid marks. The speed of appellant's car was approximated by various witnesses from 60 to 70 miles per hour.

After striking the median railing the appellant left his automobile, jumped the median rail and ran off, attempting to remove his shirt. In his flight from the scene he was also seen to climb a fence at the edge of the freeway. A passing motorist, Carl Simmons, tried to apprehend him, whereupon appellant pulled a knife on Simmons and threatened to kill him.

Thereafter Simmons returned to the freeway, obtained the assistance of Officer B. L. Goodson, and then in company with Goodson and another passing motorist, Cecil Kensey, searched for and found appellant. Simmons identified appellant as the driver of the automobile which struck the deceased and expressed the opinion that appellant was intoxicated. His testimony as to appellant's intoxication was corroborated by the witness Kensey and Officer Goodson. Appellant's behavior was violent and belligerent at the time of his arrest and he had to be restrained on the way to the hospital and police station, and at the hospital.

Dr. Joseph A. Jachimczyk, Harris County Medical Examiner, testified that Peebles' death was caused by a fractured skull, a

broken neck, a crushed left chest and a broken back. The deceased apparently died instantly or immediately after the collision.

■ In his first ground of error, appellant contends the trial court committed reversible error in admitting into evidence statements attributed to the appellant subsequent to the collision by the State witnesses Simmons and Goodson. It is appellant's position that (1) the statements were not admissible as res gestae. utterances, and further that (2) if they were res gestae, they were still inadmissible in absence of a compliance with the statutory warnings given by a magistrate as required by Article 15.17, Vernon's Ann.C.C.P.

Simmons, after testifying to his first encounter with the appellant, related, without objection, that upon appellant's apprehension by Officer Goodson appellant again threatened to kill him (Simmons) and stated that if he did not, his friends would.

On re-direct examination of the witness Simmons, the following testimony was elicited:

"Q. After the defendant was caught by you and Officer Goodson, did he say anything about this collision?

"A. Yes, he did.

"Q. What was that, sir?

"A. I informed him he had killed a man over there, a Deputy Sheriff—

"Mr. Norris: I object to anything stated by this man as being too remote, immaterial and irrelevant.

"Mr. Applewhite: I believe we went over that a while ago.

"The Court: Overruled.

"Q. (by Mr. Applewhite) What did he say?

"A. (by Witness) He said he hadn't killed nobody. He had been in a fight.

"Q. Been in a fight?

"A. Yes, sir.

"Q. Did he say anything else that you remember?

"A. No sir, other than I was a liar and an s. o. b. and he would kill me."

On direct examination of Officer Goodson, State's counsel elicited testimony concerning appellant's cursing and abusive language at time of arrest. Over objection (irrelevant, immaterial and while appellant was under arrest) the witness was permitted to testify as follows:

"Q. (by Mr. Applewhite) What are some of the things he said?

"A. (by Witness) He stated he had been in a fight in a bar uptown somewhere and kept telling us he hoped the son-of-a-bitch he hit died.

"Q. This was one continuous outburst on his part, these statements?

"A. Yes sir, the whole time we were there. The part of him being in a fight at a bar we had no knowledge of that happening, if it had."

The statements attributed to the appellant occurred within approximately 15 minutes after the collision and at the very time of his arrest. At such time the record reveals that the appellant had fled the scene of the collision, as described above, had pulled a knife and threatened the witness Simmons, and when arrested, appellant had been running, was sweaty, breathing heavily, was cursing and using abusive language, acted belligerent and was completely uncooperative. Such conduct continued for some time following the arrest.

In Preston v. Commonwealth, 406 S.W. 2d 398, the Court of Appeals of Kentucky, in discussing the admissibility of evidence as res gestae, said:

"According to Wigmore, and it is demonstrably so, courts in general have reduced the term 'res gestae' to a useless and mis-

leading shibboleth by embracing within it two separate and distinct categories of verbal statements, one of which is truly an exception to the hearsay rule and the other of which is not, the two being admissible in evidence under different principles. Wigmore on Evidence, § 1767 (Vol. VI, p. 182). When the utterance of certain words constitutes or is part of the details of an act, occurrence or transaction which in itself is relevant and provable, the utterance may be proved as a verbal act, just as may be a visual observation of an event. This is not hearsay evidence; it is not admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what took place. One of the several qualifications for admissibility of this type of statement is that 'the words must be contemporaneous with the conduct, or, in the usual phrase, must accompany the act.' Id., § 1776 (Vol. VI, p. 197).

"The character of utterance that is admissible as a genuine exception to the hearsay rule, also under the customary label of 'res gestae,' is a spontaneous exclamation, which may or may not be exactly contemporaneous with the provable act or event. Id., § 1745 et seq. (Vol. VI, pp. 131 et seq.). See Norton's Adm'r v. Winstead, 218 Ky. 488, 291 S.W. 723 (1927). See also note, Res Gestae in Kentucky, by H. E. Edmonds, 39 Ky.L.J. 200 (1950–51). The typical case presented is a *statement or exclamation, by a participant, immediately after an injury, declaring the circumstances of the injury,* or *by a person present* at an affray, a railroad collision, or *other exciting occasion,* asserting the circumstances of it as observed by him.' Wigmore on Evidence, § 1746 (Vol. VI, p. 134). This type of statement is received in a testimonial capacity, as evidence of the truth of the fact asserted. Ibid.

" 'It will be seen that these two classes of statements or exclamations are based on very different principles, and that the question of their admissibility must be determined by the principles applicable to the class within which they fall. * * * The true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue, or whether that nervous excitement has died away,' etc. Keefe v. State, 50 Ariz. 293, 72 P.2d 425, 427 (1937)."

It is the position of the State in the case at bar that the declarations of the appellant were incoherent utterances of an intoxicated person, and were admitted at the time the question of intoxication was still in issue.

It appears, therefore, that the testimony offered by the State as to the acts, conduct and declarations of appellant as described above was *not* admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what took place at the time appellant was apprehended shortly after leaving the scene of the collision. In other words, appellant's statement as to a fight in a bar was admitted to show the details of a relevant occurrence which was provable, and was *not* admitted for the purpose of proving that in fact there had been a fight in a bar. See Wharton's Crim.Evid. (12th Ed.) Vol. 1, Sec. 257, p. 588; State v. Tyron, 145 Conn. 304, 142 A.2d 54.

We therefore hold that the statements complained of were admissible under the "verbal act" doctrine, sometimes referred to as the so-called res gestae rule. See 24 Tex.Jur.2d, Sec. 581; Evans v. State, Tex. Cr.App., 401 S.W.2d 602; Johnson v. State, Tex.Cr.App., 379 S.W.2d 914; Wilder v. State, 169 Tex.Cr.R. 255, 333 S.W.2d 367; Byers v. State, 166 Tex.Cr.R. 34, 310 S.W. 2d 331, 333.

In view of our holding it is unnecessary to determine whether such statements were also admissible as a spontaneous exclama-

tion, a genuine exception to the hearsay rule.

▮▮ It is further observed that a portion of the complained of testimony was previously admitted into evidence without objection. It should also be remembered that if any portion of the entire conversation was properly admissible as res gestae, then the whole conversation is admissible where only a general or blanket objection is interposed. Phillips v. State, 137 Tex. Cr.R. 206, 128 S.W.2d 393. In other words, where a party offers "an entire conversation, and the opponent merely objects to the whole offer, if parts of the offer are admissible the judge will not be guilty of error for overruling the objection." McCormick and Ray, Texas Law of Evidence, 2nd Ed., Sec. 25. The only objection interposed was a general one. The trial court did not err in admitting these statements.

▮ We further reject appellant's assertion that the admissibility of such statements is governed by Article 15.17, supra. We overrule the contention that such article is applicable to res gestae. The legislative history of the article indicates the exact opposite. To adopt the construction urged by appellant would have the practical effect of rendering inadmissible all res gestae declarations.

Appellant's first ground of error is overruled.

▮ In his second point of error appellant complains that the trial judge committed reversible error in permitting the introduction of a simple assault conviction as part of appellant's prior criminal record at the penalty stage of the proceedings under Article 37.07, Sec. 2, V.A.C.C.P. Such conviction occurred on October 15, 1965, in the County Criminal Court at Law No. 4 of Harris County where the appellant was originally charged by information with the offense of aggravated assault. Appellant contends that the phrase "prior criminal record" as used in Sec. 2(b) of Article 37.-07, V.A.C.C.P. is ambiguous rendering the

statute unconstitutional. It is further contended that if the statute is not constitutional for this reason, evidence as to the prior criminal record of an accused should be limited to those offenses which bear a definite relationship to the primary charge. Appellant argues that a conviction for simple assault bears no relation to the charge of murder without malice under the provisions of Article 802c, V.A.P.C., an offense that has no character of malice or intent.

▮ It is true that the phrase "prior criminal record" as used in Article 37.07, Sec. 2(b), supra, is not defined for the purposes of the statute. It is a cardinal rule of statutory construction, however, that where words are not so defined, then "the words employed are ordinarily given their plain meaning, without regard to the distinction usually made between the construction of penal laws and laws on other subjects, unless the act clearly shows that they were used in some other sense." 53 Tex. Jur.2d, Statutes, Sec. 146, pp. 212–213.

▮ Even if "prior criminal record" can be said to have no plain meaning, the fact that it is indefinite or uncertain in some respects so as to creat a doubt as to its meaning and to necessitate judicial construction would not invalidate the statute. 53 Tex.Jur.2d, Statutes, Sec. 24.

▮ We reject appellant's contention that Article 37.07, supra, is unconstitutional.

In Rojas v. State, Tex.Cr.App., 404 S.W.2d 30, a prosecution for the felony offense of driving while intoxicated, we held in construing Art. 37.07, Sec. 2(b), supra, that a conviction for the misdemeanor offense of drunken driving was admissible as a part of the defendant's prior criminal record.

Subsequently in Fuller v. State, Tex.Cr. App., 409 S.W.2d 866, involving an assault to murder prosecution, we held, in interpreting the same statute, that a conviction for the offense of simple assault in the Jus-

tice Court was admissible as a part of the defendant's prior criminal record.

While the conviction introduced in each case bore some definite relationship to the offense charged, we did not intend to leave the impression that this was a necessary prerequisite to the introduction of a previous conviction as part of a defendant's prior criminal record at the penalty stage of the proceedings under Article 37.07, supra.

■ We hold that the prior conviction of simple assault was admissible as part of appellant's prior criminal record in the case at bar. We do not agree that under the provisions of Article 37.07, supra, in effect at time of appellant's trial, evidence as to appellant's prior criminal record should have been limited to those offenses which bear a definite relationship to the instant charge. No such legislative intent is indicated.

Appellant's second ground of error is overruled.

It should be observed that Article 37.07, supra, has been amended effective August 28, 1967. Acts 1967, 60th Leg., Reg.Sess., Ch. 659, p. 1740. Article 37.07, Sec. 3(a), as amended, now reads in part:

"the term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense."

■ It would thus appear in the future that a simple assault conviction occurring in a court of record either as a primary charge or as a lesser and included offense would be admissible as part of a defendant's prior criminal record without regard to its materiality to the offense for which he is on trial; but if the simple assault conviction occurred in a Justice or Corporation Court, such conviction is inadmissible unless material to the offense charged.

While the necessity of such distinction escapes this writer, it appears that even if the amended version of Article 37.07, supra, had been in effect at time of appellant's trial, the simple assault conviction, being in a court of record, would have been admissible regardless of materiality.

■ In his third ground of error appellant contends that the trial court committed reversible error in permitting the deceased's wife to testify to matters irrelevant and immaterial and only calculated to prejudice the jury.

As a State's witness, at the guilt stage of the proceedings, Mrs. Peebles testified she had been married to the 30 year-old deceased deputy sheriff who had been so employed for six (6) years; that he worked in his off-hours as a motorcycle escort to supplement his salary. She identified her husband from a photograph, which was then introduced into evidence. All of the above evidence was admitted without objection.

Appellant's general objections were promptly sustained as to the following questions by the prosecutor:

"1. Did you and Mr. Peebles have any children?

"2. How long were you married?

"3. Do you know how much money he made with the Sheriff's Department?.

"4. Did he sometimes work extra jobs to provide for you and your family?"

In answering the objection to the first of these questions, the prosecutor stated: "I think the jury has a right to know for the purpose of punishment." He was overruled.

In Ainsworth v. State, 122 Tex.Cr.R. 483, 56 S.W.2d 457, relied upon by appellant, the deceased's son was allowed to testify over appellant's objection that his mother was left with eight (8) children ranging in age from eighteen years to six months; that they were in poverty and had to pick

cotton for a living. We adhere to the correctness of our holding in Ainsworth. We do not, however, deem it controlling here. In addition to the factual differences between the two cases, appellant's objections in the case at bar were all sustained and no prejudicial testimony was heard by the jury.

Appellant, nevertheless, contends that the mere sustaining of objections to improper questions which violate the rights of the accused does not vitiate the harm, and relies upon Elizondo v. State, 130 Tex. Cr.R. 393, 94 S.W.2d 457.

In Elizondo the trial court sustained appellant's objection to the prosecutor's question, "How many children did you make orphans when you killed David Gomez?" There the trial court certified to this Court that the asking of the question was extremely prejudicial and the prejudice created was not cured by sustaining the objection.

This Court in reversing Elizondo's conviction stated: "In view of the certificate of the trial judge that the question was obviously of such a harmful nature as to prejudice appellant's rights, we are constrained to hold that reversible error is manifested."

We cannot agree that this holding is applicable to the case at bar. The trial court has certified no similar findings to this Court, nor were the State's questions to which the objections were sustained of the same inflammatory nature (assuming the guilt of the accused).

We believe that the proper disposition of this ground of error is governed by our decisions in Chapman v. State, 136 Tex.Cr. R. 285, 124 S.W.2d 112; Cavarrubio v. State, 160 Tex.Cr.R. 40, 267 S.W.2d 417 and Salazar v. State, Tex.Cr.App., 397 S.W.2d 220.

In Chapman v. State, supra, a witness, unrelated to the deceased, testified that the deceased had two boys and they were in the courtroom at the time. There the court held that the matter was not of sufficient importance to reflect error.

In Cavarrubio v. State, supra, the injured party in an assault to murder case was permitted to testify, over objection, that his family consisted of a wife and two small children. This Court in affirming the conviction, reviewed a wealth of cases on the subject, and while recognizing the inquiry as being irrelevant and immaterial, concluded that this point alone did not constitute reversible error.

In Salazar v. State, supra, the father of the deceased testified that the deceased was married and had a family of eight. The appellant's objection ("highly improper") and motion for mistrial was overruled. Citing Cavarrubio, this Court affirmed the conviction, concluding that such irrelevant and immaterial testimony alone cannot constitute reversible error.

The only testimony of Mrs. Peebles that the jury was permitted to hear was that to which appellant did not object. Every one of appellant's objections to questions propounded by the State were promptly sustained and the witness was not permitted to answer. It is our considered judgment that these facts do not constitute reversible error.

Appellant's third ground of error is overruled.

In his fourth and final ground of error appellant contends that the trial court committed reversible error in not declaring a mistrial when the prosecutor engaged in an inflammatory and prejudicial jury argument. Appellant complains of four different statements.

The first statement is as follows:

"Was he making any sense in his statements? He talked like a drunk. He was saying things that didn't make sense, something here and something there. Did any of the witnesses ever change their mind that he was intoxicated. No, they

didn't. UNDER OUR LAWS AFTER A MAN IS ARRESTED HE CANNOT BE COMPELLED TO GIVE EVIDENCE AGAINST HIMSELF. HE DOESN'T HAVE TO TAKE THE STAND. IT'S IN THE CHARGE ** "

Appellant then interrupted the prosecutor's argument with an objection and moved for a mistrial; the trial judge overruled both.

This Court has held that reversible error is not committed when the prosecutor systematically reads from the court's charge that portion of the instruction pertaining to the defendant's failure to testify without extraneous comment. Bryant v. State, Tex. Cr.App., 397 S.W.2d 445, (1965); Reese v. State, 142 Tex.Cr.R. 254, 151 S.W.2d 828, 837 (1941).

In the present case the prosecutor was not systematically reading from the court's charge, but was narrating what the witnesses had testified and then went immediately to the complained of argument.

■ The well-settled rule in Texas for many years has been that "[f]or the argument offend against the statute, Article 38.08 V.A.C.C.P. [old Art. 710], prohibiting allusion to or comment upon the failure of a defendant to testify, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the defendant's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion thereto." Richardson v. State, 172 Tex.Cr.R. 299, 356 S.W.2d 676 (1962); Johnson v. State, 167 Tex.Cr.R. 598, 322 S.W.2d 540 (1959); Potts v. State, 167 Tex.Cr.R. 240, 319 S.W.2d 304 (1958); Hart v. State, 163 Tex.Cr.R. 472, 293 S.W.2d 659 (1956).

This standard is similar to the test adopted by many of our Federal Courts. In Davis v. United States, 357 F.2d 438, the Fifth Circuit Court of Appeals said:

"The facts and circumstances of each case must be carefully analyzed to determine 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' "

See also Hayes v. United States, 368 F.2d 814 (9th Cir.–1966); Knowles v. United States, 224 F.2d 168, 170 (10th Cir.–1955); United States ex rel. D'Ambrosio v. Fay, 349 F.2d 957 (2nd Cir.–1965).

Applying such test, we do not construe the statement by State's counsel as referring to appellant's failure to testify. The Court properly charged on the law relating to the appellant's failure to testify. See Fifth Amendment, United States Constitution; Article I, Section 10, Texas Constitution, Vernon's Ann.St.; Article 38.08 (former Art. 710), V.A.C.C.P. Whether he did so routinely or as a result of a request does not appear of record. At least no objection or exception appears in the record. Further, before State's counsel was interrupted in mid-sentence by the general objection, he appears to have been briefly referring to the general rights of any accused. What he may have said about this appellant would be a matter of conjecture.

Even if we had no statute (Art. 38.08, supra) and even if the argument did constitute a comment on appellant's failure to testify in violation of his federal constitutional rights, we conclude the same is harmless error, finding beyond a reasonable possibility that it might have contributed to appellant's conviction. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106; Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171.

In Chapman v. State of California, supra, the United States Supreme Court concluded " * * * that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with

the Federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction." The rule adopted by the Supreme Court for determining harmless error is that set forth in Fahy v. State of Connecticut, supra.

The second statement by the prosecutor complained of by appellant is as follows:

"When you get in that jury room, consider all the evidence the State has presented to you and I know you will do what you think is right and you can walk up to Mrs. Peebles and her children * * *."

At this juncture appellant's counsel then interrupted the argument with an objection. The trial court sustained the general objection and instructed the jury not to consider the remarks for any purpose; admonished State's counsel to stay in the record, but overruled appellant's motion for mistrial.

We cannot conclude in light of the entire record and the prompt action of the trial court that such argument is of such harmful character as to demand reversal. See Vineyard v. State, 96 Tex.Cr.R. 401, 257 S.W. 548; Brown v. State, 121 Tex.Cr.R. 528, 51 S.W.2d 616.

The third statement made by the prosecutor and complained of by appellant is as follows:

"See how the defendant is protected. That's the way it should be because no man should be convicted if he's not guilty and I would never participate in that kind of trial. If I have an indictment and after observing it I do not feel he's guilty * * *."

Appellant interrupted and complained that the prosecutor was outside the record. The trial judge sustained the objection and instructed the jury upon request not to consider it for any purpose and cautioned counsel to stay in the record. Appellant made no motion for mistrial nor any complaint that such remark was harmful or prejudicial.

If the prosecutor's remark can be interpreted as an expression of his personal opinion of the guilt of the appellant, then such argument would be improper. Where, however, an instruction to disregard is not refused, such conduct will not cause a reversal. 1 Branch's Anno. P.C.2d, Sec. 385, p. 406.

After appellant's objection was sustained he appears to have been satisfied because he asked the court for no further relief. Appellant is now in no position to complain of said statement. Hughes v. State, Tex.Cr.App., 409 S.W.2d 416 (1966); Van Skike v. State, Tex.Cr.App., 388 S.W.2d 716 (1965); Matlock v. State, Tex.Cr.App., 373 S.W.2d 237 (1963).

The fourth statement made by the prosecutor of which appellant complains is where the prosecutor after reviewing all the evidence showing appellant's intoxication said:

"Now, if you do not believe that man was intoxicated you go back there and say not guilty and I would have to say you must be the stupidest * * *."

Appellant interrupted the prosecutor's argument with an objection (highly improper and amounting to a threat to the jury) and moved for a mistrial; the trial judge overruled both.

It is well-settled that the prosecutor can argue his opinions concerning issues in the case to the jury so long as the opinions are based on evidence in the record, and not as constituting unsworn testimony. Van Skike v. State, Tex.Cr.App., 388 S.W.2d 716 (1965); Johns v. State, 157 Tex.Cr.R. 401, 249 S.W.2d 61 (1952); Vineyard v. State, supra.

We view this argument as the prosecutor's opinion of the evidence and not as constituting unsworn testimony.

The judgment is affirmed.