Lonnie Earl PERKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–81–0081–CR.

Court of Appeals of Texas, Tyler.

June 2, 1983.

Leonard M. Roth, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Ray Elvin Speece, Ned Morris, Asst. Dist. Attys., Houston, for appellee.

SUMMERS, Chief Justice.

The appellant was charged by indictment with murder as charged in paragraphs one and two and with injury to a child as charged in paragraph three. The State abandoned the first and third paragraphs of the indictment and proceeded on the charge of murder as alleged in paragraph two. The jury found appellant guilty of murder as charged and assessed punishment at 20 years confinement in the Texas Department of Corrections.

We affirm.

Sivon Adams, a witness for the State, testified that she had lived with the appellant about a year and had a child by him; that said child (the deceased herein) was a female baby named Remica Ramon Lachelle Adams,[1] about four months old at the time of her death on July 28 or July 29, 1978; that she gave the baby a bath about 5:00 p.m. on the afternoon of July 28th and the baby was playful and in good health at that time. She identified the appellant and further testified that appellant arrived home at about 6:30 p.m.; that shortly thereafter the baby began to cry in her crib in the bedroom; that appellant took the baby from the bedroom into the bathroom, locked the door and would not let her in the bathroom; that she could hear the baby hollering a little; that after about five min-

utes the appellant came out, laid the baby in the crib and refused to let her into the bedroom to see the baby. She testified that appellant later "grabbed the baby and took her back in the bathroom"; that the baby began hollering loudly; that appellant had locked the door again and would not allow her into the bathroom; that appellant was in the bathroom with the baby for approximately twenty minutes on the second occasion; that when he came out, he laid the baby on her bed. Ms. Adams further testified he hit her in the mouth with his fist when she tried to enter the bedroom and would not let her look at the baby; that as she was leaving the apartment to make a telephone call, appellant said to her "now I got Remica and now I am going to get you . . ."

Ms. Adams' testimony further disclosed that she returned to the apartment, after attempting to contact appellant's mother by telephone but appellant would not let her in; that when appellant finally allowed her to enter the apartment, she went to check on the baby and the child did not look right; that the baby looked dark, limp and unconscious; that she tried unsuccessfully to awaken the child; that when appellant's mother arrived, appellant was standing on the rail of the apartment with the baby in his arms; that after appellant's mother was unable to revive the child with mouth-to-mouth resuscitation, everyone got into her car, went first to a fire station (which was closed) and then to the police station where the police officers tried but were unable to get the baby breathing again. Ms. Adams further testified: On an occasion prior to the one forming the basis of these charges, she saw appellant hit the baby on the "butt", and as a result she took the baby and left for a week. On another occasion prior to the incident in question, she saw appellant burn the baby's toes with a cigarette lighter. During the events made the basis of this charge, there was no one in the apartment but Ms. Adams, appellant and

---

1. The baby's birth certificate, admitted without objection, shows said child was born March 10, 1978.

the baby. Ms. Adams denied she had ever tortured or beaten the baby.

Dr. Edwardo Bellas, an assistant medical examiner for Harris County testified that he performed an autopsy on the dead baby on the morning of July 29, 1978; that he found contusions on the child's chest, abdomen and thighs, contusions and lacerations around the anal area and also noted there were two small burns healing on the toes of the child's right foot; that the abdomen of the child was markedly distended as a result of internal bleeding due to a large laceration of the child's liver; that his examination revealed no head injury or brain damage to the child. He further testified the abdomen was filled with clotted fluid and blood; that the laceration of the child's liver was about four inches long and two inches deep; that this laceration was consistent with the child having been beaten on the stomach and above the liver with a person's hands and fists. He stated that in his opinion, the cause of the child's death was hemoperitoneum, i.e., bleeding in the abdominal cavity due to the laceration of the liver caused by a blunt trauma consistent with a beating with hands and fists. He further stated that although the anus of the child showed abrasions and puncture-type wounds, there was no evidence of anal sex having been performed on the child.

Officer C.S. Warren was present at the police substation when the baby was brought in by appellant about 10:50 on the night of July 28, 1978. He testified that as he undressed the baby, he saw a large blue bruise on the baby's stomach and numerous bruises on the back of the child's legs; that he observed burns on the child's toes and a red-yellow pus on the baby's dry diaper. He also stated baby's rectum appeared torn and raw.

After appellant's confession was admitted into evidence, it was read to the jury in its entirety. When the State thereafter rested its case in chief at the guilt/innocence phase of the trial, the defendant rested without offering any evidence.

Appellant brings six grounds of error. At the outset we shall address appellant's fourth and fifth grounds of error in which he challenges the admissibility of the written confession. In his fourth ground he alleges the trial court erred in failing to suppress appellant's confession since it was not voluntarily given.

Sgt. Greenstein testified about the circumstances surrounding the giving of appellant's statement. Appellant was being held in a tank with other prisoners in the jail at the Houston Police Department when on Sunday morning Greenstein brought him to the juvenile division for interrogation regarding the incident under investigation. Greenstein testified that he gave appellant his *Miranda* warnings (from the "blue card" provided by the Harris County District Attorney's office) before he started talking to appellant about the incident (which warnings were read to the jury); that appellant appeared to understand the warnings, communicated freely and responded to the questions asked. Greenstein also testified that appellant voluntarily waived his rights to counsel, his right against self-incrimination and his right to terminate the interrogation and made the statement voluntarily; that he went over each of his rights with appellant, one by one before he signed the statement; that such statement, witnessed by two other officers, was subsequently admitted into evidence as State's Exhibit No. 12. At a hearing outside the presence of the jury, Greenstein testified that appellant was under arrest at the time he made the statement and that he personally gave appellant two *Miranda* warnings; that appellant asked him to call upstairs to the jail and ask them to "lay off him"; that appellant stated prisoners and two police officers were picking on him, harrassing him, hitting him and roughing him up in jail. Greenstein testified he called the jail supervisor to investigate these allegations and was informed by the supervisor that so far as he knew the allegations were not factual, but that he would try to isolate appellant from other prisoners. In further testimony, Greenstein stated he saw no evidence of any bruises or scratches on appellant and

appellant said he did not sustain an injury that needed medical attention.

Appellant contends that the abuse practiced on him by prisoners and the two police officers in jail as reported to Greenstein, created "physchological pressure" on him, a fear that no one would help, that more abuse would come and that a statement under such circumstances could not be voluntary.

■ Appellant was afforded a hearing to determine the admissibility of his confession in accordance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). At such a hearing, the trial judge is the sole judge of the weight and credibility of the witnesses, and he may believe or disbelieve all or any part of any witness' testimony. The appellant did not testify before the jury and did not call any witness on the issue of voluntariness of the confession. There was no evidence before the jury which raised that issue. Greenstein's testimony regarding abuse by some prisoners and two officers while in a jail tank the night before his statement shows that such abuse, if any there was, was disconnected with and in no way related to the confession or any effort to obtain or force a confession. The record also reflects that appellant was given *Miranda* warnings at the police substation before his transfer to the central offices in downtown Houston. We conclude that the evidence was clearly sufficient to allow the trial court and jury to find that appellant's statement was voluntarily made and not the product of force, fear or coercion. Appellant's fourth ground is overruled.

In his fifth ground appellant alleges that the trial court erred in failing to suppress appellant's confession due to the fact that appellant was not taken before a magistrate to be given his rights as required by Art. 15.17.[2]

Although Sgt. Greenstein testified that he personally gave Perkins at least two Miranda warnings before appellant gave and signed the statement, he further stated that he did not know if and doubted that appellant had been taken before a magistrate before giving the statement since magistrates were not available on weekends. Approximately twelve hours passed between the time of appellant's arrest and the completion of his statement.

■ In *Dunlap v. State,* 462 S.W.2d 591, 593 (Tex.Cr.App.1971), the court held that if the *Miranda* warning as required by Art. 38.22 was given by the person taking the confession, the failure to comply with the directions of Art. 15.17 did not invalidate a confession that is otherwise properly obtained. Absent a showing of a causal connection between the failure to take an accused before a magistrate and the accused's confession, the validity of the accused's confession is not affected. There is no such showing here. *Von Byrd v. State,* 569 S.W.2d 883, 893–4 (Tex.Cr.App.1978, cert. den. 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 123); *McDonald v. State,* 631 S.W.2d 237, 239 (Tex.App. Fort Worth 1982). In *Shadrick v. State,* 491 S.W.2d 681, 684 (Tex.Cr.App.1973), a confession made 10 or 11 days after arrest was upheld even though the accused had not been taken before a magistrate. Appellant's fifth ground is overruled.

In his first three grounds appellant complains (1) the trial court erred in failing to charge the issue of circumstantial evidence; (2) this being a circumstantial evidence case, there was insufficient evidence to support the conviction; and (3) the court erred in allowing into evidence an inadmissible extraneous offense of murder.

The appellant contends that a charge on circumstantial evidence should have been given in that there was no direct evidence that appellant murdered or did anything on the day of the offense to harm *Remica Ramon Adams;* that the confession refers to the appellant's actions with respect to a child named *Romice;* and that no attempt

---

2. This and all other statutory references are to Vernon's Annotated Code of Criminal Procedure unless otherwise noted.

was made to show that "Romice" and "Remica Ramon Adams" were one and the same person; that the only way the statement could have been utilized by the jury is as an extraneous offense of murder of a child named *Romice.* We find no merit in appellant's contentions.

Considering the evidence in appellant's voluntary statement, all the elements of the offense charged are present. Appellant admits that he struck the baby "real hard in the stomach" when she would not hold her bottle. He said that he "came down real hard on her and she got quiete (sic) for awhile then." When the baby started crying again appellant "got mad again and it set me off, kind of like putting a match to a fire, I hit her again in the stomach real hard . . . after I hit Romice (sic) the second time, she got real quiet this time . . ." Afterwards, appellant "went into the bedroom to check on Romice (sic) and she was real still and when I picked her up, she was real limp and she wasn't breathing real good but her heart was still beating." The testimony of Dr. Bellas, when considered in light of appellant's statement, was sufficient to prove beyond a reasonable doubt that the blows struck by appellant to the baby's abdomen were the cause of her death. There is no evidence in the record from any source to indicate any other possible cause of the blunt trauma which resulted in the baby's death.

A careful reading of appellant's voluntary statement shows that the reference to a child named "Romice" was a reference to the daughter of Lonnie Earl Perkins, Remica Ramon Lachelle Adams. The statement makes no reference to any child other than the one identified as "my baby." The statement refers to appellant playing with his baby and holding his baby. Prior to any reference to "Romice" appellant says he hit her "real hard in the stomach" after having referred to "my baby. Reading appellant's voluntary statement in conjunction with the evidence given by Sivon Adams, the internal evidence of the statement itself makes clear that the reference to a child named "Romice" was to the deceased, Remica Ramon Lachelle Adams. At the time

of the incident in question only three persons were present: the appellant, Sivon Adams and *Remica.* There was no other child in the apartment with appellant and Sivon Adams. Sivon Adams and appellant had no other children. The reference to "Romice" could have been to no other child than Remica Ramon Lachelle Adams.

■ Appellant's confession supplied direct evidence that he committed the offense charged. No charge on circumstantial evidence was necessary. *Honea v. State,* 585 S.W.2d 681, 687 (Tex.Cr.App.1979). Furthermore, we conclude there was ample evidence to support the conviction, and there is no merit in appellant's contention that since the statement referred to "Romice" the reference was to an extraneous offense of murder. Appellant's first three points are overruled.

In his sixth ground of error, appellant complains that the court erred in failing to grant appellant a mistrial due to improper prosecutorial jury argument. During the States' opening argument at the guilt/innocence phase of the trial, the prosecutor stated:

"Now the closest thing that he can say to try to deny this would be that somebody up in the jail on another floor, on the fifth floor, injured him or threatened, either prisoners or officers or both."

Appellant's counsel objected to this argument as being a comment on the defendant's failure to take the stand. The objection was sustained, the jury was instructed to disregard the statement and appellant's motion for mistrial was denied. Appellant complains that the argument quoted is a comment by the prosecutor on the failure of the appellant to testify and as such violated appellant's fundamental right against self-incrimination as guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution. We do not agree.

Just prior to, and at the time of the quoted argument, the prosecutor was discussing the evidence bearing upon the voluntariness of appellant's inculpatory statement. The argument complained of was a

continuation of such discussion and referred to evidence admitted without objection from Sgt. Greenstein's testimony relating to appellant's complaint to him of some abuse in jail from other prisoners as well as two officers.

In *Nowlin v. State,* 507 S.W.2d 534 (Tex.Cr.App.1974), the court held that for indirect comments on failure of a defendant to offer evidence to constitute reversible error, the comments must call for the denial of an assertion of fact or contradictory evidence *that only the accused is in a position to offer.* Where the argument of the State's attorney can be construed reasonably as referring to the accused's failure to produce other testimony than his own, such argument is not improper.

A reasonable construction of the argument in question would be that it asserted the closest thing appellant could argue in support of his position that the inculpatory statement was involuntary would be that somebody in the jail on another floor had injured or threatened him, either prisoners in jail or police officers. We believe it is evident *that persons other than appellant* could have testified to the events alluded to which allegedly occurred in jail prior to the making of appellant's statement.

Finally, assuming arguendo that the argument of the prosecutor was error, the trial court sustained appellant's counsel's objection and instructed the jury to disregard the argument. While a mistrial was not granted, the court's charge further instructed the jury not to consider appellant's failure to testify. In light of the instructions and considering all the evidence in view of *Ramos v. State,* 419 S.W.2d 359 (Tex.Cr.App.1967), we construe the argument in the case at bar to be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fontaine v. California,* 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968); *Armstrong v. State,* 502 S.W.2d 731, 734 (Tex.Cr.App.1973); *Ford v. State,* 477 S.W.2d 27 (Tex.Cr.App.1972). Appellant's sixth ground of error is overruled.

The judgment of the trial court is affirmed.