Jimmy Dale TINDEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–87–191 CR.

Court of Appeals of Texas,
Beaumont.

April 6, 1988.

Rehearing Denied April 20, 1988.

Petition for Discretionary Review
May 4, 1988.

Hugh O'Fiel, Beaumont, for appellant.

Tom Maness, Criminal Dist. Atty. and R.W. Fisher, Asst. Criminal Dist. Atty., Beaumont, for appellee.

## OPINION

BURGESS, Justice.

A jury found appellant guilty of aggravated sexual assault. The jury found the enhancement allegation contained in the indictment to be true and assessed punishment at confinement for life in the Texas Department of Corrections and a fine of $10,000.

Appellant's first three points of error are grouped for argument, and therefore, we will address these points together. Points one through three are as follows:

### [POINT] OF ERROR NO. 1

The evidence in this cause is insufficient to prove the necessary element of lack of consent of the Prosecutrix to the alleged offense of aggravated sexual assault.

### [POINT] OF ERROR NO. 2

The evidence in this cause is insufficient in that there is not sufficient evidence to prove that the Prosecutrix put forth every exertion and means within her power to resist the commission of the alleged aggravated sexual assault.

### [POINT] OF ERROR NO. 3

The trial court erred in denying this Appellant's motion for instructed verdict of not guilty based on insufficient evidence.

In reviewing points of error alleging insufficient evidence to sustain a criminal conviction, this court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App. 1984). The evidence shows that shortly before closing time (2:00 a.m.) on the morning of September 19, 1986, appellant entered a bar in which Regina Hancock was working as the bartender. The only other person in the bar was Joseph Gilley, a regular customer. A few minutes later, a man wearing a black knitted cap with a camouflage bandanna covering his face entered the bar wielding a shotgun.

The gunman threatened to kill anyone who moved. He made Ms. Hancock use electrical tape to tie the hands of the two male patrons, Gilley and appellant, behind their backs as they lay on the floor. The gunman made Ms. Hancock give him all the money in the cash register. Then, the gunman locked Mr. Gilley in a beer cooler and blindfolded Ms. Hancock by wrapping electrical tape around her head. Ms. Hancock testified that appellant's eyes had not been blindfolded when the gunman blindfolded her. She also stated that when she used the roll of tape to tie the hands of appellant and Gilley, it made a particular sound as

the tape was unwound from the roll. She testified she did not hear that sound again while her eyes were blindfolded.

The gunman then indicated that appellant and Ms. Hancock were to leave the bar with him. As they approached the door of the bar, the gunman threatened to kill Ms. Hancock if there was an alarm connected to the door. Ms. Hancock also stated that as they left the bar, appellant was holding her arm tightly. She stated that she managed to remove the tape from her hands and eyes just before the gunman placed her and appellant in the back seat of a car. She described the car as a maroon, two-door, late model car. When the gunman noticed that she had removed the tape, he threatened to kill her if she removed it again and retaped her hands and eyes more securely. The gunman then placed Ms. Hancock in the back seat of the car and told her to lay her head in appellant's lap.

The gunman drove around for a few minutes and then stopped. He ordered Ms. Hancock and appellant to get out of the car. The gunman had to assist Ms. Hancock in getting out of the car. He had both hands on her as he walked her towards a door which appellant, Ms. Hancock and the gunman entered after having to make a step upwards. Ms. Hancock did not hear appellant stumble or bump into anything as he exited the car and entered the place.

The gunman then removed the tape from Ms. Hancock's hands as he undressed her. Ms. Hancock heard the sound of someone's pants being unzipped while the gunman had both of his hands on her. The gunman then told Ms. Hancock to take appellant's sex organ into her mouth. When she did so appellant's penis was erect. The gunman instructed her to have sexual intercourse with appellant, whom he referred to as "Jim." Appellant directed her movements with his hands during this change of position. Ms. Hancock stated that appellant seemed to be "enjoying it" and that at one point told her, "[L]et's give him a show, let's put on a show for him." While she was having intercourse with appellant, the gunman put his sex organ into Ms. Hancock's mouth. Ms. Hancock testified

that she complied with the demands of the gunman because he had threatened to kill her.

The gunman helped Ms. Hancock get redressed, then he tied her to a bed. She heard the gunman walk away from her, and heard a door open and close and a car door open and close. Then she heard a door open and close. The gunman then approached her again and left. Once again she heard the same sounds, and the gunman came back and untied her from bed. He led her to another room and retaped her hands tightly.

As the gunman took Ms. Hancock out the door and back to the car, he had both hands on her. The gunman then drove around for a while and left Ms. Hancock and appellant beside a road. When she removed the tape from her hands and eyes, she ran to the nearest house and asked the residents there to call the police. When Officer Hobbs of the Beaumont Police Department arrived, Ms. Hancock told him she needed to return to the bar, because one of her customers had been locked in the cooler. Upon cross-examination, Ms. Hancock testified that appellant told the officer that his car was at the bar.

After they returned to the bar, police officers discovered that appellant's car was not at the bar. Appellant told Officer Thompson that a friend had dropped him off there earlier. Appellant told the officer that his friend's car was red and that he thought it was a Chevrolet. Appellant told the officers that his friend was staying at his apartment. When the officers arrived at appellant's apartment they noticed a maroon Chevrolet Monte Carlo parked in front. The officers observed three 12-gauge shotgun shells and a pair of wire-rimmed eyeglasses inside the car.

When the officers knocked on the door of appellant's apartment, Glenn Guillot answered the door. The officers entered and noticed Guillot acted scared. Inside the apartment the officers found a 12-gauge shotgun on a gun rack. Mr. Gilley testified that this was the type of gun used by the robber at the bar. The officers also saw a green camouflage bandanna and a black

knitted cap on the floor below the gun rack. These items were identified by Ms. Hancock and Mr. Gilley as the bandanna and cap worn by the gunman. When Ms. Hancock was brought into the apartment, in the presence of appellant and Guillot, she recognized the bandanna, knitted cap, the shotgun, and the bed in the bedroom. Officers also found a pillow case containing money. In the bedroom, the officers found a roll of black electrical tape and pieces of rope were found tied to the bedposts.

Glenn Guillot testified that he was the gunman who entered the bar, robbed it and abducted Ms. Hancock. His testimony was substantially the same as Ms. Hancock's as far as it concerned the events which occurred after he entered the bar and threatened Ms. Hancock with the shotgun. Guillot also testified that appellant planned the commission of the robbery and sexual assault. He testified that appellant suggested that they commit this robbery and abduct Ms. Hancock so he (appellant) could have sex with her. Guillot also stated he did not cover appellant's eyes with tape because that was part of the plan.

Guillot testified that appellant directed him throughout the commission of this offense by "mouthing words" silently, by gestures, and by writing notes. Guillot stated that appellant instructed him by mouthing the words "strip her." Then appellant indicated to Guillot that he wanted Ms. Hancock to perform oral sex on him (appellant). Guillot then ordered Ms. Hancock to perform oral sex on appellant.

■ Insofar as we are able to understand appellant's points of error numbers one through three and the arguments in support of these points, appellant's complaint on appeal is that there is insufficient evidence that Ms. Hancock did not effectively consent to the sexual conduct committed by appellant. Ms. Hancock testified that she performed an act of oral sex upon appellant because of threats against her life by the gunman. Guillot testified he was the gunman and that appellant directed him to order Ms. Hancock to perform oral sex upon him (appellant). Appellant was found guilty of this offense as a party,

and the evidence shows he directed or encouraged virtually every act committed by Guillot with the intent to promote and assist the commission of the offense. Therefore, we find that the jury could reasonably conclude that appellant was criminally responsible for the conduct of Guillot. *TEX. PENAL CODE ANN. sec. 7.02(a)(2)* (Vernon 1974).

■ Appellant relies upon *Perez v. State*, 50 Tex.Crim. 34, 94 S.W. 1036 (1906) for the proposition that the state must prove that the alleged victim of a sexual assault made every exertion she was capable of under the circumstances in order to establish the commission of an offense. Under present law, a sexual assault is without the effective consent of the victim if the actor compels the victim to submit or participate by threatening to use force or violence against the victim. *TEX.PENAL CODE ANN. sec. 22.011(b)(2)* (Vernon Supp.1988). The state introduced evidence which was entirely sufficient to justify any reasonable juror to find that Ms. Hancock submitted or participated because of threats made by Guillot at the direction of and with the assistance of appellant.

Appellant does not complain on appeal that the testimony of the accomplice, Guillot, was insufficiently corroborated. We believe that Ms. Hancock's testimony was sufficient corroboration that appellant was at the scene of the offense and that he participated in the commission of this offense. The evidence from sources other than Guillot clearly is sufficient to show the offense was committed in appellant's apartment. Guillot drove from the bar to appellant's apartment, yet there is nothing in the record to indicate that he ever asked appellant his address. This would be sufficient to raise an inference that appellant and Guillot were somewhat well acquainted. Ms. Hancock's testimony that she never heard the sound of the tape unrolling after her eyes were covered would raise a reasonable inference that the gunman did not tape appellant's eyes. Appellant also lied to Officer Hobbs when he told him that he had left his car at the bar.

■ It is also relevant that Guillot remained at appellant's apartment without making any effort to hide the bandanna, knit cap and shotgun used in this crime. Nor did he remove the pieces of rope from the bed posts. It seems reasonable to infer that if appellant's friend had so disguised himself and committed this offense without knowledge of appellant, he would not have remained at appellant's apartment until police arrived, or that he would have at least hidden the evidence from his friend. We hold that there was sufficient circumstantial evidence linking appellant to the commission of this offense to corroborate Guillot's testimony. Appellant's points of error numbers one through three are overruled.

Appellant's fourth and fifth point of error are as follows:

### [POINT] OF ERROR NO. 4

The trial court erred in failing to grant Appellant's timely motion for mistrial because of the prejudicial jury argument by the Prosecution commenting on the failure of Appellant to testify.

### [POINT] OF ERROR NO. 5

The trial court erred in failing to grant Appellant's timely motion for mistrial because of the prejudicial jury argument of the Prosecution, injecting harmful unsworn testimony before the jury.

Once again, appellant has grouped these points of error for argument, therefore we will consider them together. The state had introduced a note which Guillot testified had been written by himself and appellant immediately after the sexual conduct had been completed. The state later called an expert in the field of questioned documents. This witness testified that from his comparison of the writing on the note and known handwriting samples given by appellant, he was unable to determine with certainty that any of the writing on the note was done by appellant. He also stated that appellant had refused to give further handwriting samples for comparison.

During jury argument in the guilt-innocence phase of the trial, the prosecutor mentioned that the expert had testified that he needed lots of samples to make a comparison. Then the prosecutor stated, "Way you do it, this is the one thing, one piece —", at which point defense counsel stated, "... I am going to object to why he didn't do it. That is a comment on his failure to testify, we ask for a mistrial on that grounds." The trial court sustained the objection and instructed the jury to disregard the comment of the prosecutor.

■ Appellant seems to argue that a prosecutor's comment on a defendant's failure to give handwriting samples is a comment on the defendant's failure to testify. A comment on an accused's failure to testify is improper because it violates the privilege against being compelled to give evidence against oneself. *Ramos v. State*, 419 S.W.2d 359, 367 (Tex.Crim.App.1967). Compelling a defendant to give a handwriting sample does not violate the privilege against giving evidence against oneself. *Olson v. State*, 484 S.W.2d 756, 772 (Tex.Crim.App.1969). Therefore, we hold that a prosecutor's comment on a defendant's failure to give handwriting samples is not a comment upon a defendant's failure to testify.

■ Although it is not absolutely clear, it appears that appellant also urges that the prosecutor's arguments that appellant expressed no remorse and never apologized constitutes a comment on appellant's failure to testify. In determining whether a prosecution argument is a comment on the accused's failure to testify, we must view the argument from the standpoint of the jury. *Ramos*, 419 S.W.2d at 367. The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App. 1982), *cert. denied*, 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983). In applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character.

In the present case, the trial court's charge to the jury included instructions concerning the defense of duress. Appellant's counsel had urged in his argument that the jury find the defense applicable. The context of the argument now complained of also indicates that this argument was made in order to show that appellant was not a victim of the offenses committed by Guillot as defense counsel had claimed. Furthermore, there was testimony by Ms. Hancock which established that appellant did not express any remorse or apologize to her at any time during the offense or after Guillot released them. Under the circumstances of this case, we find that the argument complained of was not manifestly intended to be nor would it have necessarily been taken by the jury as a comment on appellant's failure to testify. Appellant's fourth point of error is overruled.

Appellant also complains of the prosecutor's argument that appellant enjoyed raping Ms. Hancock injected harmful, unsworn testimony before the jury. However, the record contains testimony by Ms. Hancock that appellant seemed to enjoy having sex with her. Therefore, appellant's fifth point of error is overruled.

Appellant has filed a supplemental brief containing the following point of error:

> The trial court erred in instructing the jury on the law of parole and good conduct time mandated by Article 37.-07(4)(a), Code of Criminal Procedure for same has been found unconstitutional by the Texas Court of Criminal Appeals.

Appellant's brief then cites *Rose v. State*, —— S.W.2d ——, No. 193–87 (Tex.Crim. App. November 12, 1987) (motion for rehearing pending). This point was not raised in appellant's original brief. Therefore, this point of error is not properly before this court. *Coleman v. State*, 632 S.W.2d 616, 619 (Tex.Crim.App.1982). While we are aware that the court of criminal appeals' opinion in *Rose* was not issued until after appellant filed his original brief, we do not believe that "justice requires" us to consider this point of error. *TEX.R. APP.P. 74(o); see also Kalmbach v. State*, 481 S.W.2d 151, 155 (Tex.Crim.App.1972).

The judgment of the trial court is affirmed.

AFFIRMED.