**Jimmy Mack SHORT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 948–83.**

Court of Criminal Appeals of Texas, En Banc.

June 13, 1984.

---

Stanley G. McGee, Angleton, for appellant.

Jim Mapel, Dist. Atty. and Jo Wiginton, Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Trial was before the jury upon appellant's plea of not guilty of injury to a child. V.T.C.A. Penal Code, Sec. 22.04. After finding appellant guilty, the jury assessed punishment at eleven years. The conviction was affirmed by the Court of Appeals for the First Supreme Judicial District. See *Short v. State*, 658 S.W.2d 250 (Tex. App.—Houston [1st] 1984). We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that certain remarks of the prosecutor made during jury argument did not constitute direct comment on the failure of appellant to testify.

Appellant was convicted of engaging in conduct that caused a rectal tear, which tear in turn caused an abcess and infection to the colon and body of four-year-old Kenneth Alan Abel, appellant's stepson.

While the sufficiency of the evidence is not challenged a review of same is detailed in hope that it will lend clarity to our discussion of the relevant issues.

The victim lived with his mother, Lillian Cameron Short, and appellant. Mrs. Short testified that the victim was in a healthy, normal condition when she left him with appellant on the morning of April 22, 1981 at 10:00 o'clock. Appellant was to babysit with the victim from 10:00 a.m. until 2:00 p.m.

When Mrs. Short returned from work she noticed that the victim appeared to be in severe pain, had difficulty walking, and had bruises on his buttocks.

On the evening of the 22nd, Josie Martinez was babysitting with the victim. Members of Martinez' family were also present. Martinez and three of her family members testified that Kenneth could not walk, sit, eat or go to the bathroom. He was feverish, crying, and in pain. They noticed bruises and swelling on his groin and genital area. When he was asked how he got the bruises he stated that his "daddy" hit him. The family called the Children's Protective Services Unit of Brazoria County, a part of the Texas Department of Human Resources.

Margo Green, a Protective Services worker, went to appellant's home the next day. Upon observing Kenneth's condition she asked appellant what he had to say and appellant replied, "I have nothing to say."

Green arranged for Kenneth to be taken to Alvin Community Hospital. He was subsequently transferred to John Sealy Hospital in Galveston where doctors found that he had a tear in the colon and rectum, caused by a traumatic injury. Kenneth remained in the hospital for several weeks. Appellant was arrested in June of 1981.

Eileen Thacker is a Sergeant-Investigator for the Brazoria County Sheriff's Department, investigating cases involving juveniles. She participated in the investigation of the instant offense. Thacker interviewed appellant in jail shortly after his arrest. Appellant told her that a fourteen-year-old neighbor child named Eugene Lyons had kicked Kenneth "in the butt" thus causing his injuries.

Thacker testified that though she had been investigating the case for weeks and had spoken to appellant, he had never before blamed Lyons for his stepson's injuries.

Lillian Cameron Short testified that Kenneth at one time blamed Lyons for his injuries, but at another time blamed appellant for putting his fingers into Kenneth's rear end.

Kenneth testified that his injuries were inflicted by Eugene Lyons when the latter "stuck a spoon up there."

Eugene Lyons testified and denied responsibility for the victim's injuries.

■■■ A prosecutor's comment on a defendant's failure to testify offends both our State and Federal Constitutions. *Nickens v. State*, 604 S.W.2d 101, 104 (Tex.Cr. App.1980). For a statement to constitute a comment on the failure to testify, the language of such a statement must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Griffin v. State*, 554 S.W.2d 688 (Tex.Cr.App.1977). The implication that the language used has reference to the appellant must be a necessary one in order for this Court to hold that the statement was a comment on the defendant's failure to testify. *Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App.1975). For an indirect comment to constitute reversible error, it must call for a denial of an assertion of fact or contradictory evidence that only the defendant is in a position to offer. *Johnson v. State*, 611 S.W.2d 649 (Tex.Cr.App. 1981).

The first complained of comment was as follows:

"MR. DIES: 'I have nothing to say.' A father who truly and really loves or even an adult who truly and really loves a little boy that's living with him, who knows for a fact that another child stuck a spoon up his butt is not going to tell somebody who is there to take the child away, 'I have nothing to say.' And you know that. Gosh, common sense tells you that. And I didn't have to tell you that before I got here, but I got to argue it like a silly fool. June 7th of 1981, now I didn't ask for that. Defense counsel asked Eileen Thacker, and she warned him, 'I have to tell you who told me,' and he wanted to know anyway and he got it, and boy he got it.[1]

"Eugene Lyons, 14 year old sexual pervert. Eugene Lyons kicked him in the butt. Come on now. Does that make sense? Does it all fit? And it's from his mouth. Does it fit? If Eugene Lyons had stuck a spoon up his [the victim's] butt at that point in time knowing the consequences don't you think he [appellant] would have told Thacker[2] that? And I didn't ask for that comment. That's strong evidence, ladies and gentlemen. That's strong evidence. And that's a factual circumstance that has not been contradicted or controverted by any witness I called.

"MR. RICE: Your Honor, that's a comment on the defendant's failure to testify and he has a right not to testify.

"THE COURT: I will overrule that objection. Go ahead, Counsel."

■■■ The "strong evidence" the prosecutor referred to was appellant's failure to blame Eugene Lyons for the injury to his stepson (and his failure to say anything other than "I have nothing to say"), on the day after the injury occurred, in light of appellant's later allegation, and the allegation of the defense at trial, that Lyons indeed committed the offense. The prosecutor stated that the evidence of appellant's silence on the date of the offense was not contradicted by any witness, "I

---

1. This refers to the point in the testimony where Thacker informed defense counsel that appellant was the source of her information concerning the victim's difficulties with Eugene Lyons.

2. The prosecutor undoubtedly meant to refer to Green instead of Thacker. It was Green to whom appellant spoke the words, 'I have nothing to say," on the day after the alleged offense. It was Thacker to whom appellant told the story about Eugene Lyons.

called." We fail to see how this reference to consistency in the testimony of *State's witnesses* relative to appellant's silence *on the day after the offense* constituted a direct or indirect comment on appellant's failure to testify *at trial.*

Even if the prosecutor's statement could somehow be interpreted as an indirect comment on appellant's failure to testify, it did not call for a denial of an assertion of fact or contradictory evidence that only the appellant was in a position to offer. Appellant's statement that, "I have nothing to say," was witnessed by appellant, Green, Lillian Cameron Short and the victim. The latter two witnesses could have denied the prosecutor's assertion of fact.

█ The second complained of comment was as follows:

"MR. DIES: I'm going to sit down and shut up in just a few minutes. Common sense tells you that this kind of crime, injury to a child, doesn't occur with a lot of people watching, witnessing it. You know that. I didn't have to tell you that before you got here. Common sense tells you that kind of crime, that kind of a criminal act, is going to occur in some private area and I submit to you in this particular instance the facts indicate that it was within the private confines of the home under the custody and control of Jimmy Mack Short, the Defendant. And common sense tells you that there's only two witnesses, and we've heard what one of them told everybody.

"MR. RICE: Your Honor, I will have to object. That's a comment on the Defendant's right not to testify.

"THE COURT: Objection overruled."

The State contends that the prosecutor's comments were permissible under authority of *Nickens v. State,* supra. In *Nickens* we held that the following statement by the prosecutor did not amount to an impermissible comment on the accused's failure to testify:

"I said I'd ask for a little understanding. Now, ladies and gentlemen, there are only two real witnesses to this case. The little girl came in here and told you what

happened. There is no other witness to it..."

*Nickens,* however, is distinguishable from the instant case. The defendant in *Nickens* not only attacked the general weakness in the State's case, but also repeatedly emphasized that the State was relying on one witness, and a weak, uncorroborated, unreliable witness at that. With the jury argument of defendant's counsel in mind we held that there was just as much likelihood the prosecutor was responding to defense counsel's argument as that he was commenting on the accused's failure to testify.

In the instant case, by way of contrast, the defense made a general attack on the State's case but did not argue that the State was relying for conviction upon the testimony of one witness who was not believable. In fact, appellant made no attack whatsoever on the trial testimony of his eyewitness stepson, since the victim testified for the defense. The decision in *Nickens* does not apply to the case before us.

Nevertheless, the prosecutor's comment does not call for reversal. The prosecutor stated that, "we've heard what one of them [the two witnesses to the offense] *told everybody.*" (Emphasis added.) Clearly, considering the entire testimony in the case and the arguments made prior to this point in time, the prosecutor was not referring to what the victim *testified to at trial.* The victim's testimony was favorable to the defense, as he denied appellant's involvement in the offense and blamed Lyons instead. Thus, the State had no reason to focus favorably on the victim's *trial testimony* or to compare it favorably to appellant's failure to testify.

Quite the contrary, the prosecution in final jury argument sought to discount the victim's trial testimony by pointing out how much the victim loved his stepfather and wanted to protect him.

It was just as logical or perhaps the more likely inference that the prosecutor in mentioning what the victim *told everybody* was referring to what the victim told the

four members of Josie Martinez's household on the night of the offense and what he *told* his mother when he was in the hospital; namely that his "daddy" was responsible for his injuries.

The prosecutor also stressed, as we have already seen, appellant's failure to indicate until months after the event that Lyons kicked his stepson.

During his final jury argument the prosecutor repeatedly emphasized appellant's failure to implicate Lyons or to say much of anything at the time of the offense when he was questioned by his wife and various social workers.

With this in mind we return to the challenged remarks of the prosecutor that: "... Common sense tells you that that kind of a crime, that kind of a criminal act, is going to occur in some private area ... And common sense tells you that there's only two witnesses, and we've heard what one of them told everybody."

While this could have been a comment on the accused's failure to testify it is equally plausible that the prosecutor was comparing the victim's numerous statements just after the offense implicating appellant to the appellant's statements implicating nobody.

Certainly we cannot say that the prosecutor's remarks were "manifestly intended" as a comment on appellant's failure to testify or that the jury would have "naturally and necessarily" taken them to be such. See *Griffin v. State*, supra.

Accordingly, the judgment of the Court of Appeals is affirmed.

TEAGUE, J., dissents to the majority's disposition of the second complained of argument of the prosecuting attorney.