Freddie Joe **COCKERHAM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 194–86.

Court of Criminal Appeals of Texas, En Banc.

April 8, 1987.

John H. Hagler, Dallas, for appellant.

John Vance, Dist. Atty. and Constance M. Maher and Ruth Plagenhoef, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant's conviction for aggravated robbery was reversed by the Court of Ap-

---

peals. *Cockerham v. State,* 703 S.W.2d 334 (Tex.App.-Corpus Christi 1985). The Court of Appeals ruled that the prosecutor's indirect comment on appellant's failure to testify was both improper and harmful under Art. 38.08, V.A.C.C.P.

We granted the State's petition for discretionary review to examine the correctness of this holding. Upon careful review of the briefs of the respective parties and of the Court of Appeals' opinion, we find that the decision of the Court of Appeals is correct and does not merit further review by this Court. The State's petition for discretionary review is therefore dismissed as improvidently granted, pursuant to Tex. R.App. Pro. Rule 202(k). *Michalenko v. State,* 678 S.W.2d 75 (Tex.Cr.App.1984); *Pruitt v. State,* 678 S.W.2d 76 (Tex.Cr.App. 1984).

CLINTON, J., concurs only in the ultimate result of this opinion; that the judgment of the Court of Appeals become final. He does not agree that the "improvidently granted" vehicle is the proper way to reach that result.

ONION, Presiding Judge, dissenting.

All too frequently the complained of comment on the defendant's failure to testify is lifted out of the context in which it is made by the prosecutor during jury argument and along with the objection thereto is highlighted in the appellant's brief. Many appellate courts turn on the bright light of scrutiny and apply it to the comment alone without proper consideration of all the facts and circumstances, evidence, court's charge not to consider the failure to testify and the context in which the comment was made. In my opinion that was what happened in this instant case. The language used must be looked to from the standpoint of the jurors, not from the standpoint of the lawyers or appellate judges.

A Dallas County jury found appellant guilty of aggravated robbery as charged in the indictment. Punishment, enhanced by two prior felony convictions, was assessed by the trial court at confinement in the Texas Department of Corrections for 60 years. The Court of Appeals reversed the judgment of conviction. *Cockerham v. State,* 703 S.W.2d 334 (Tex.App.-Corpus Christi 1985). The Court of Appeals held that the prosecutor's indirect comment on appellant's failure to testify was both improper and harmful. We granted the State's petition for discretionary review to examine the correctness of this holding.

The State's evidence shows that complainant Mark Jolley lived in a Dallas apartment, together with his wife Julie and their infant son. On April 18, 1984, Julie answered the front door and met the appellant, who asked about an upstairs neighbor in the apartment complex. The appellant left after Julie told him there was no one living upstairs by the name (John or Charlie) he had mentioned. On April 21, 1984, appellant returned between 6:00 p.m. and

6:30 p.m. and knocked on the sliding patio door located at the back of the Jolleys' apartment. Mark, with his infant child in his arms, responded to the knock, and appellant again stated he "was looking for the people upstairs." He asked who and how many persons lived upstairs.[1] Mark testified that he did not know who lived upstairs and that he invited appellant to wait for Julie to return home to see whether she could be of assistance.

After Mark closed the sliding door, he turned and saw appellant pointing a gun at him. Mark testified: "He told me this was no bullshit and he wanted all my money and he didn't want no hassles." The men went to the living room and sat down. The television set was on. Shortly thereafter Julie walked into the apartment. Julie spoke briefly to the appellant, who at the time according to Mark, then had the pistol hidden in his coat pocket. She then took the child into the bedroom to change diapers. At this point appellant told Mark to get up and to get the money. Mark picked up several envelopes containing money used "to pay the bills." He stated: "I was looking through it to find the least amount of money in the envelopes to give him and he just reached over there and grabbed all of the envelopes and shoved them in his pocket." Mark estimated the envelopes contained approximately $700.00.[2] Appellant then told the Jolleys "not to leave the house for 30 minutes or it would be the last time [they] ever left the house again." After appellant left, Mark looked out the back door and watched him drive away. Mark noticed that appellant drove a dark "El Camino" and that the first two letters on the license plate was "WF." Mark left the apartment 20 or 25 minutes after the appellant's escape to call the police although Julie wanted to call the police as soon as Mark told her of the robbery. Appellant was not arrested until some time later.

Both Mark and Julie independently identified appellant's picture in a photo spread supplied by the Dallas police on May 2, 1984. The Jolleys were also able to identify appellant in open court as being the same man they had seen on April 18 and April 21, 1984.

After being advised of her Fifth Amendment privilege not to incriminate herself, Cynthia Skipworth Martinez testified for the defense. She had once lived above the Jolleys. Martinez stated that she had met the appellant "just a couple of times," and that on one occasion appellant had given her $20.00 to buy marihuana. Cindy testified that she took the money "downstairs to Julie's" and that Julie then brought the marihuana up to her apartment. According to Cindy, Julie met the appellant on this occasion. Cindy also testified that she had seen marihuana on a tray in the Jolley apartment 10 or 15 times, and that she had witnessed drug transactions there "a couple of times." Cindy went on to state that she had seen the Jolleys smoke marihuana many times.

The State called Julie's father, Teddy Garner, as a rebuttal witness. Garner, a former Dallas police officer, testified that during his years in the traffic division he would frequently visit Mark and Julie's apartment while on duty. He estimated that he would stop by unannounced "two to five times a week." Garner stated that he never saw any marihuana in the apartment nor had he ever seen Mark or Julie smoke marihuana.

The State's sole ground for review maintains the Court of Appeals erred in holding that the prosecutor's jury argument was a comment on the failure of appellant to testify in violation of Article 38.08, V.A.C.C.P.

The first prosecutor summarized the evidence from the State's viewpoint in his argument to the jury. Appellant's counsel commenced his argument and soon stated:

"If you believe everything happened as Mark and Julie Jolley told you, stick with

---

1. Mark testified appellant had a beard, wore painter's pants, a tee shirt and an Army fatigue jacket, just as he had been dressed the day when Mark observed him conversing with Mark's wife.

2. It was shown that Mark at first reported to the police that $400.00 was taken. He testified that he later calculated the cash taken and it was actually $700.00.

me after the trial. I've got some swamp land in Arizona for you...."

Appellant's counsel, in reviewing Mark Jolley's testimony, stated it didn't make sense for Jolley to invite a stranger into his house to await his wife when the man was merely asking who lived upstairs and Jolley didn't know. Counsel noted that once the man was inside the house he pulled a gun on Jolley and said he wanted all Jolley's money but instead of getting the money and leaving then the men sat down and watched television. Counsel argued that this didn't make sense if in fact a robbery was taking place. Counsel then noted that Julie Jolley didn't see a gun when she came into the apartment, and soon went to the bedroom with the baby and didn't see the man again that day. Counsel observed that according to Mark Jolley the money in envelopes was taken after Julie went into the bedroom. Counsel scoffed at Jolley's testimony that he kept his money in separate envelopes for rent, truck payments, groceries, etc., because checking accounts were a hassle and because of the cost of a service charge. He pointed to the fact that Jolley spent $12 to $15 per month cashing his weekly paychecks, and a fee for each money order used to pay his bills. He inferred that the money was kept there for other purposes such as drug transactions which neighbor Cindy Martinez had observed. Counsel argued that the reason Jolley would not let his wife call the police for 25 minutes or so after the alleged offense was to allow him to concoct a story, that Jolley thought he and his wife were "covered pretty well" because "anyone who would incriminate him with the drugs would also have to incriminate themselves. That's [however] what Cindy Martinez did" even though she had been subpoenaed by the State.

Arguing that Jolley got "ripped off," counsel, without admitting that appellant was present, further stated, "This is a drug deal that went bad."

In closing argument the prosecutor responded and argued that Martinez's testimony was not credible and "you can just throw it right out the window where it belongs." She stated the appellant was "trying the victim in this case because that is all he has." It was then argued the Jolleys had identified the appellant as the robber and had identified him in a photographic spread. The record then reflects:

"(Ms. Rolf) Now, what is the defense trying to say? Are they trying to say this man is not the man who robbed them? Well, you can't ride both horses. It was either a drug deal gone bad or he was the one who robbed him. Now, which is it? What horse is the defense going to ride?

"All of the evidence in this case shows that this man—even their own witness, Cindy Martinez, puts the Defendant at the scene of the robbery on April 21st, 1984, their own witness. So which horse are they going to ride?

"All the evidence in this case shows that he is the one who pointed the gun and asked for the money and threatened the witnesses during the robbery.

"MR. LAMB (Defense Counsel): Objection, Your Honor. That's a misstatement of the facts.

"THE COURT: I'll overrule with this instruction, folks. You-all remember the evidence as you heard it and not as the lawyers remember it.

"MS. ROLF: *No defense witness has come in here and told you that this man over here didn't commit that robbery.*

"MR. LAMB: *Objection,* Your Honor. Counsel is commenting on failure of the Defendant to testify.

"THE COURT: *I'll overrule.*

"MS. ROLF: Members of the jury, even if Mark Jolley is the kingpin of heroin here in Dallas County, every bit of evidence in this case points to the fact that this Defendant and this Defendant alone is the one who pointed that gun and demanded the money and threatened to kill them if he didn't get it. Now, that is the crux of the case.

\*　　\*　　\*　　\*　　\*　　\*

I do remember the questioning of Mr. Lamb in cross-examination of Mark Jolley about some kind of deal between \* \*

mentioning the brother's name Billy Cockerham. * * * What happened to Billy Cockerham? Were they just not able to get Billy Cockerham to come in here and lie for him? Is that it? They had to get Cindy down here to lie for him? What happened to that? * * *" (Emphasis supplied.)

A prosecutor's comment on a defendant's failure to testify offends both our federal and state Constitutions. *Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App.1975); *Nickens v. State*, 604 S.W.2d 101, 104 (Tex.Cr.App. 1980); *Short v. State*, 671 S.W.2d 888, 890 (Tex.Cr.App.1984). Article 38.08, V.A.C. C.P., also prohibits such comments and is a mandatory statute. *Bird v. State*, supra.

In order to constitute a violation of Article 38.08, supra, prohibiting comments on the defendant's failure to testify, the language used must be either manifestly intended, or of such character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Griffin v. State*, 554 S.W.2d 688 (Tex.Cr.App.1977); *Johnson v. State*, 611 S.W.2d 649 (Tex.Cr.App.1981); *Angel v. State*, 627 S.W.2d 424 (Tex.Cr.App.1982); *Banks v. State*, 643 S.W.2d 129 (Tex.Cr. App.1982); *Short v. State*, supra.

The language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. It is not sufficient that the language used might be construed as an implied or indirect allusion thereto. *Ramos v. State*, 419 S.W.2d 359, 367 (Tex.Cr.App.1967); *Hicks v. State*, 525 S.W.2d 177, 178 (Tex.Cr.App.1975), and cases there cited; *Bird v. State*, supra; *Cook v. State*, 702 S.W.2d 597, 599 (Tex.Cr. App.1984).

In applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character. *Bird v. State*, supra at 894; *Ramos v. State*, supra; 21 Tex.Jur.3d, Crim.Law, § 1582, p. 344–345.

It has been held, however, that the State may properly comment on the failure of a defendant to call other witnesses to support his defensive theory. *Joines v. State*, 482 S.W.2d 205 (Tex.Cr.App. 1972); *Mutscher v. State*, 514 S.W.2d 905 (Tex.Cr. App.1974). Thus where the argument of the prosecutor can reasonably be construed as referring to the defendant's failure to produce other testimony than his own, it is not improper. *Nowlin v. State*, 507 S.W.2d 534 (Tex.Cr.App.1974). To require reversal, alleged reference to the accused's failure to testify must necessarily allude to accused's failure to testify and not merely his failure to produce evidence from others. *McCarter v. State*, 527 S.W.2d 296 (Tex.Cr. App.1975). Article 38.08, supra (former Article 710, V.A.C.C.P., 1925), is not transgressed by argument which the jury might reasonably apply to the absence of others' testimony. *Costilla v. State*, 168 Tex.Cr.R. 335, 327 S.W.2d 593 (Tex.Cr.App.1959). See also 21 Tex.Jur.3d, Crim. Law, § 1581, p. 342, citing *Brown v. State*, 475 S.W.2d 761 (Tex.Cr.App.1971), and other cases.

It must, however, be kept in mind that while the State has the right to comment upon the accused's failure to call a certain witness or witnesses to support his defensive theory, this right may not be utilized in such a way that the prosecutor can improperly comment on the defendant's failure to testify. See and cf. *Angel v. State*, 627 S.W.2d 424 (Tex.Cr.App.1982); *Johnson v. State*, 611 S.W.2d 649 (Tex.Cr.App. 1981).

In 21 Tex.Jur.3d, Crim. Law, § 1584, pp. 347–349:

"Counsel's remarks will not be deemed a reference to the defendant's failure to testify where they could have been understood to apply to the nonproduction of a witness other than the defendant, or where there is nothing in the record to show that there were not other witnesses than the defendant who might have given testimony relevant to the issue. A reference to the lack of evidence concerning the activities or whereabouts of a defendant at a certain time is therefore not improper where it is shown that third persons could have testified to those matters.

"A general reference to the defendant's failure to produce evidence is not barred by the provision prohibiting comment on defendant's failure to testify, and comment is barred only to the extent that the failure to testify is necessarily implied. For the prosecutor's argument to come within the mandatory prohibition of the statute prohibiting comment on the defendant's failure to testify, it must be such as cannot be reasonably applied to the failure of the accused to produce testimony other than his own. The provision is thus not transgressed by a statement to the effect that the accused has offered no defense, or an inadequate defense, or that the defense is a fabrication."

This Court has held that a prosecutor's remark constitutes an impermissible comment on a defendant's failure to testify if the remark alludes to missing evidence that *only* the defendant could supply. *Cook v. State*, 702 S.W.2d 597, 600 (Tex.Cr.App. 1984); *Cannon v. State*, 691 S.W.2d 664 (Tex.Cr.App.1985); *Owen v. State*, 656 S.W.2d 458 (Tex.Cr.App.1983); *Angel v. State*, 627 S.W.2d 424, 426 (Tex.Cr.App. 1982); *Johnson v. State*, 611 S.W.2d 649 (Tex.Cr.App.1981); *Myers v. State*, 573 S.W.2d 19 (Tex.Cr.App.1978); *Dubose v. State*, 531 S.W.2d 330 (Tex.Cr.App.1975). Likewise, for an indirect comment to constitute reversible error, it must call for the denial of an assertion of fact or contradictory evidence that *only* the defendant is in a position to offer. *Henson v. State*, 683 S.W.2d 702, 704-05 (Tex.Cr.App.1984); *Short v. State*, 671 S.W.2d 888, 890 (Tex. Cr.App.1984); *Gayle v. State*, 713 S.W.2d 425, 428 (Tex.App.-Houston [1st Dist.] 1986).

In the instant case I do not believe that the Court of Appeals properly considered the entire testimony and the arguments made, *Short v. State*, 671 S.W.2d 888, 891 (Tex.Cr.App.1984), in concluding that the complained of argument was an impermissible indirect comment on the appellant's failure to testify. The facts and circumstances of each case must be analyzed. *Bird v. State*, supra; *Ramos v. State*, supra.

Relying upon Martinez's testimony, appellant's counsel argued that the Jolleys were drug dealers who kept cash at home in envelopes, that the Jolleys concocted the story of a robbery to cover "a drug deal gone bad" knowing anyone who had dealt with them could not come forward without incriminating themselves in drug trafficking. Appellant's counsel vigorously attacked the credibility of the Jolleys and never conceded that the appellant was present at any robbery or drug deal "gone bad."

In response the prosecutor deemed Martinez's testimony incredible and sought to bolster the testimony of the Jolleys. She suggested the appellant was trying to ride two horses at the same time, that it was either a bad drug deal or robbery, and asked "Are they trying to say this man is not the man who robbed them?" It was thereafter that the complained statement "No defense witness has come in here and told you that this man over here didn't commit that robbery" was made. Later in argument the prosecutor asked why appellant's brother Billy Cockerham had not been called as earlier defense interrogation had indicated a drug deal between Jolley and the brother.

Appellant's counsel argued that the Jolleys were engaged in drug trafficking, and without intimating appellant was involved, stated that what happened was "a drug deal that went bad." He suggested that the Jolleys had concocted a robbery scenario as a cover-up and unfairly implicated appellant in their story line.

As observed, the State may comment on the defense's failure to call certain witnesses without transgressing Article 38.08, supra, unless the defendant alone could have supplied the missing evidence. The prosecutor viewed the defense argument as suggesting that appellant was not the man who committed the robbery. The reference in the complained of argument was to "no defense witness" and was certainly not a direct reference to the appellant.

Other witnesses might have testified he was at another place at the time in ques-

tion, or given other testimony relevant to the issue. The brother's testimony may well have shed light on the events preceding the incident in question tending to discredit Mark Jolley's testimony of a robbery. The complained of testimony was reasonably susceptible to more than one interpretation from the standpoint of the jury given the context in which it was made in the course of rebuttal to invited argument. The language used was not of such character that the jury would "naturally and necessarily" take it to be a comment on appellant's failure to testify in view of the facts and circumstances of this particular case.

I do not agree with the Court of Appeals that because the objection was overruled with no instruction to disregard "the jury was undoubtedly left with the impression that they could properly consider the prosecutor's remarks." In view of other rulings of the trial court during argument and the written jury instruction not to consider the appellant's failure to testify, the court's simple ruling "I'll overrule" could not have left the jurors with the impression they had a right to ignore part of the written charge.

The "comment was not an inescapable reference to the appellant's failure to testify." *Antwine v. State*, 572 S.W.2d 541, 544 (Tex.Cr.App.1978). When taken in context, the argument of the prosecutor was clearly part and parcel of the discussion of the evidence and an answer to the argument of opposing counsel. *McKay v. State*, 707 S.W.2d 23, 36 (Tex.Cr.App.1985).

The judgment of the Court of Appeals should be reversed and the cause remanded so that appellant's remaining point of error may be considered. I dissent.

W.C. DAVIS, McCORMICK and WHITE, JJ., join this opinion.