NO. 12-01-00379-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




TIMOTHY DEAN CARMACK,
§
 APPEAL FROM THE 188TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 GREGG COUNTY, TEXAS







MEMORANDUM OPINION ON REMAND Timothy Dean Carmack ("Appellant") appeals his conviction for murder, for which he was
sentenced to imprisonment for life and fined five thousand dollars. On original submission,
Appellant raised four issues. In one of these issues, Appellant contended that a statement made by
the prosecuting attorney amounted to improper comment on his right not to testify. See Carmack
v. State, 12-01-00379-CR, 2003 WL 31835296, *5 (Tex. App.-Tyler December 18, 2002) (not
designated for publication). We held that Appellant waived the issue because the record did not
reflect the basis for his objection to the trial court. Id.  The court of criminal appeals reversed our
holding and remanded that issue alone for further consideration. See Carmack v. State, No. 139-03,
2003 WL 21354694, *1 (Tex. Crim. App. June 11, 2003) (not designated for publication). We
affirm.

Background

 On December 17, 2000, Appellant and his two-and-a-half year old son, Dusty, were left alone
together in a small apartment after Appellant's girlfriend left for work at 3:00 PM. At approximately
4:30 PM, Appellant contacted 9-1-1 and advised them that his son had fallen in the bathtub and was
unconscious. In fact, there was no bathtub in the apartment, but rather a small shower stall. 
Subsequently, emergency personnel arrived and transported Dusty to the hospital where he later died. 
 Appellant was indicted for intentionally or knowingly causing the death of Dusty Carmack,
an individual younger than six years of age, by means unknown. (1) Appellant pleaded "not guilty" and
the matter proceeded to trial. 

 Ben Harrison ("Harrison"), a paramedic with the Longview, Texas fire department, testified
that following the incident, Appellant stated that Dusty had fallen in the bathtub and had become
unconscious after the fall. (2) Harrison further testified that en route to the hospital, he noted that Dusty
had two black eyes, which was indicative of a closed head injury, and that he had multiple bruises
about his body. 

 Doctor Joni McClain ("McClain"), a Dallas county medical examiner, testified regarding the
autopsy she performed on Dusty. McClain testified as to Dusty's external injuries noted during the
autopsy, such as bruises on his left upper arm, thigh, lower leg, face, (3) and the sides and back of his
head, and abrasions on his right leg, abdomen, forearm, and upper shoulder. McClain testified that
during the autopsy, it was also determined that Dusty had retinal hemorrhaging as well as
hemorrhaging in the back of the head and in the forehead, subdural hemorrhaging on the right side
of the brain, and bruising and hemorrhaging in his abdomen. McClain testified that the bruises on
Dusty's forehead and abdomen were the result of blunt force trauma. (4) McClain categorized the force
necessary to produce the injuries Dusty sustained as that which might result from an automobile
accident. The blunt force trauma to Dusty's head, McClain concluded, was the cause of Dusty's
death. McClain also noted that Dusty could not have received a fatal head injury from a simple fall.

 Doctor Theodore Slade ("Slade"), the neurosurgeon who treated Dusty, also testified as to
Dusty's injuries as he observed them. Slade testified that while it was "perhaps possible" that
Dusty's injuries resulted from falling in the shower, such an event was "unlikely" the cause of his
injuries. Slade also testified that it was possible that one of the bruises on the left side of Dusty's
forehead could have resulted from a surgical procedure performed on Dusty.

 Doctor Ronald Uscinski ("Uscinski"), a neurosurgeon, testified on Appellant's behalf. 
Uscinski testified that he reviewed all of Dusty's medical reports, laboratory reports, x-rays, and
autopsy. He recounted medical research he had reviewed regarding head injuries to children and
provided alternate medical explanations for Dusty's injuries. Uscinski ultimately testified that it was
his opinion that Dusty suffered injury to the brain when he fell in the shower and hit the back of his
head, seized, and stopped breathing. 

 Jessie Lynn Nealy ("Nealy"), Appellant's live-in girlfriend, testified that Dusty had no
bruises, aside from a few contusions on his thigh and knee, prior to her leaving for work on the day
in question. Nealy further testified that Appellant had been frustrated by the fact that Dusty was not
yet potty trained. According to Nealy, who always bathed Dusty, she had never seen Dusty fall while
taking a shower. Nealy also noted that the shower was not slippery and was functioning properly
when she had used it earlier that day. Moreover, Nealy stated that it was unusual that Dusty would
have been given another shower since she had bathed him around 11:30 PM the night before and
Dusty would not have needed another shower unless he and Appellant were going to go somewhere,
which Nealy felt was unlikely since she had taken the car. 

 Appellant moved for an instructed verdict both when the State of Texas (the "State")
concluded its case-in-chief and at the close of evidence. Appellant's motions for instructed verdict
were each denied and the matter proceeded to jury argument. During the prosecuting attorney's
rebuttal argument, the following transpired:


 [PROSECUTOR]: He didn't fall in the shower. This didn't happen in the shower. It happened in
the living room. It happened in the kitchen. I wish I could tell you exactly where, but only two people
know, Dusty and the defendant, and we have -

 

 APPELLANT'S COUNSEL:: Your Honor, I object. Can we approach the bench. 

 (Off-the-record discussion)


 THE COURT: State your objection counselor if any.


 APPELLANT'S COUNSEL: I did, Your Honor.


 THE COURT: Overruled.



 [PROSECUTOR]: And you know by listening to Dr. Upchurch, Dr. Slade and especially Dr. McClain
it didn't happen the way Tim Carmack wants you to believe it happened. ... .


Ultimately, the jury found Appellant guilty of the lesser-included offense of murder, sentenced
Appellant to imprisonment for life and fined Appellant five thousand dollars. 


Improper Jury Argument

 In his sole issue on remand, Appellant contends that the prosecuting attorney's statement in
closing arguments as set forth above constituted impermissible jury argument as a comment on
Appellant's election not to testify in accord with his Fifth Amendment rights. A prosecutor's
comment on a defendant's failure to testify offends both our State and Federal Constitutions. Short
v. State, 671 S.W.2d 888, 890 (Tex. Crim. App. 1984). For a statement to constitute a comment on
the failure to testify, the language of such a statement must be either manifestly intended, or of such
a character that the jury would naturally and necessarily take it to be a comment on the defendant's
failure to testify. Id. Calling attention to the absence of evidence which only the defendant could
produce will result in reversal only if the remark can only be construed to refer to appellant's failure
to testify and not the defense's failure to produce evidence. See Fuentes v. State, 991 S.W.2d 267,
275 (Tex. Crim. App. 1999). An indirect allusion to the failure of a defendant to testify does not
constitute reversible error. See Nickens v. State, 604 S.W.2d 101, 104 n.1 (Tex. Crim. App. 1980)
(op. on reh.).

 In the instant case, the State argues that the prosecuting attorney's statement was made in
response to the following argument of Appellant's counsel:


 So there went their two theories. I guess I've always tried to figure out the theory. The theory I guess
is - was, Tim got upset because the baby wasn't potty trained and beat him to death. Or if that doesn't
work, Tim got upset because he didn't have a job so he beat the baby to death. If that doesn't work,
I don't know where we go from there. He just decided to beat the baby to death. That's the kind of
unknown that they ask you to take and convict this man and subject him to losing his liberty.


 ... .


 Unknown, then and now. Hard to tell what the theory is. Hit, punched, kicked, stomped, slammed,
mad because they weren't potty trained, mad because he didn't have a job or just mad. What
happened is just exactly what Tim Carmack said. He was giving the baby a shower.


 ... .



 You've got a tough job. I suspect the State will try to turn your attention from that unknown to talk
to you about the difference between a tub and a shower or the difference about being in a bathroom
or stepping out of the bathroom, but you know when they do that you've got to be able to believe that
the people who are saying he said those exact words are telling it just exactly like it was ... .


 The case at hand is similar to Nickens v. State. In that case, the court of criminal appeals
held that the following statement by the prosecutor did not amount to an impermissible comment on
the accused's failure to testify:


 I said I'd ask for a little understanding. Now, ladies and gentlemen, there are only two real witnesses
to this case. The little girl came in here and told you what happened. There is no other witness to it. 


 ... .


Id. at 103. In Nickens, the State argued that the prosecuting attorney's argument was invited and
pointed to argument by the appellant's counsel that the State had failed to produce certain evidence. 
Id. Specifically, the appellant's attorney argued, "They haven't brought you any of these people to
show you that these events actually happened." Id. In reaching its holding, the court stated as
follows:


 The appellant argued the State was relying for conviction upon the testimony of one witness who was
not believable. The State responded to such argument during the course of which the prosecutor made
the complained of argument, which was interrupted in mid-sentence and never finished. Taken in the
context in which it was made, the language used was not manifestly intended or of such character that
the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. 


Id. at 104.

 Here, Appellant's counsel's argument not only focused on Appellant's account of the
situation - that the baby fell in the shower - but emphasized and iterated that the State's theory was
not supported by the facts, urging the jury to accept Appellant's version of what took place. Before
he was interrupted by Appellant's objection, the State's attorney was undoubtedly responding to
Appellant's attorney's repeated references to the "unknown" agreeing that he, indeed, did not know
what happened. Yet, when argument resumed after a bench conference, the prosecuting attorney
directed the jury to medical evidence and urged it to not accept Appellant's version of the facts. 

 Taking the prosecuting attorney's statement in the context of the entire jury argument, both
the State's and Appellant's, we conclude that the language used by the prosecuting attorney was not
manifestly intended or of such character that the jury would naturally and necessarily take it to be
a comment on the accused's failure to testify. Rather, it is as likely that the prosecutor was
responding to defense counsel's argument as it was that he was commenting on the accused's failure
to testify. Therefore, the prosecuting attorney's statements did not amount to improper argument.
Appellant's sole issue on remand is overruled.


Conclusion

 Having overruled Appellant's sole issue on remand, we affirm the judgment of the trial court.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered January 21, 2004.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.














(DO NOT PUBLISH)







1. See Tex. Pen. Code Ann. § 19.03(a)(8) (Vernon 1994) (capital murder).
2. City of Longview Police Officer James Nelson ("Nelson") spoke to Appellant at the hospital following the
incident. Appellant told Nelson that Dusty was in the shower and that Appellant looked away to retrieve a wash rag,
heard a noise, and looked down to see Dusty lying on the shower floor. 
3. McClain later testified that the bruises on the side of Dusty's face and chin were the type of injuries
consistent with someone forcefully grabbing his neck or chin, not a light touch.
4. McClain further testified that the retinal hemorrhaging was an indication of blunt trauma.