# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00205-CR

**Michael Richard Ewing, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR-02-073, HONORABLE RONALD G. CARR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michael Richard Ewing appeals from a conviction by a jury of the offense of aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2006).[1] The jury assessed punishment at twenty years' imprisonment. Appellant contends on appeal that the evidence is legally and factually insufficient to support his conviction and that the trial court erred in allowing the prosecutor to comment on appellant's failure to testify. We affirm the judgment of the trial court.

## BACKGROUND

At trial, the evidence revealed that the complainant, Donald Otto, and appellant were truck drivers who worked for a highway construction hauling company. On January 16, 2002, they

---

[1] We cite the current version of the statute for convenience, but we note that recent amendments are not relevant to the issues raised in this appeal.

were driving from San Marcos to Orange, Texas, in a four-truck convoy with an oversized load of bridge components. Otto was placed in charge of the convoy with specific instructions from the company's owner to assist a new driver, Jason Null, who was a part of the convoy. Otto appointed appellant to be the lead driver in the convoy.

As the truck drivers drove to Orange, Otto attempted to instruct and provide guidance to Null. Otto testified that, at various times, appellant tied up their radio communications with non-job-related talk, and Otto was unable to communicate with Null. At one point, because appellant was on the radio, Otto was unable to direct Null in negotiating a difficult turn. Null's trailer went off into a ditch, and he knocked down a stop sign. Otto reminded appellant to keep the radio free for job-related communications, particularly for the new driver. At other points in their trip, Otto had a minor collision that he blamed on appellant, and appellant later pulled off the road to attend to his vehicle, but failed to follow company procedures.

When the drivers returned to San Marcos that night to prepare to pick up another load for delivery the next morning, Otto approached appellant to advise him that appellant would not be leading the convoy the next day. Otto testified, "The day was a disaster. [Appellant] had problems with his truck and—and he just didn't use good common sense." Appellant was standing next to his truck and working with his toolbox when Otto gave him his assignment for the next day. Otto testified that he told appellant "you need to find yourself a place in the back of the line." Otto recalled the problems they had encountered throughout the day and told appellant that he was "not lead truck material."

2

Appellant suddenly struck Otto on the head with a hard object, causing him to almost fall. Otto did not see what object appellant hit him with, but he immediately felt that his head was wet and that he was hurt. Otto yelled at another driver to call 9-1-1. Otto testified that appellant continued to pursue him after the initial attack:

> [H]e's still got this pipe or bar or whatever he had in his hand is still in his hand. All I see is this glazed look in his eyes and he's coming after me. And I'm like—you know, so I dodge—I dodge underneath the trailer to the other side. And he walks around to the other side and he's after me. You know, I don't know why, but he's after me. And so he steps to this side and I duck back under. And I'm still on the phone and trying to give directions, and holding this and watching my butt so I don't get smacked again. And I duck underneath the trailer again. This happened probably four or five times and then I don't know what happened to him.

Appellant disputed Otto's account, his counsel arguing that appellant was defending himself and only trying to get Otto's hands off of him. Two other witnesses testified that appellant acknowledged striking Otto. A cashier at a truck stop who knew both Otto and appellant testified that she asked appellant why he "hit" and "hurt" Otto. She testified that appellant responded that Otto had "grabbed my bandana." Jason Null testified that appellant told Null that he hit Otto. Null testified that when the police arrived he overheard appellant tell an officer that Otto had hit his head on appellant's truck.

Appellant was arrested shortly after the altercation. He was indicted, and a jury found him guilty of aggravated assault.

**ANALYSIS**

Appellant contends that the evidence is legally and factually insufficient to support his conviction because there was no evidence that (I) Otto suffered a serious bodily injury or (ii) the offense was committed with a deadly weapon.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). While we may disagree with the jury's conclusions, we must also exercise appropriate deference to avoid substituting our judgment for that of the jury, particularly in matters of credibility. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). We may find the evidence to be factually insufficient if the evidence supporting the finding, considered alone, is too weak to support the jury's finding beyond a reasonable doubt, or the contravening evidence is so strong that the State could not have met its burden of proof. *Drichas*, 175 S.W.3d at 799; *Zuniga*, 144 S.W.3d at 484-85.

A person commits the offense of aggravated assault when the person commits an assault, and either (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon during an assault. Tex. Pen. Code Ann. § 22.02(a). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes . . . protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (West Supp. 2006). A "deadly weapon" is

4

"anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). Thus, the offense is committed by a person either causing serious bodily injury to another *or* using or exhibiting a deadly weapon during the assault. When a deadly weapon is used in the assault, the offense does not require proof of a "serious bodily injury" but requires proof only of a "bodily injury." *Id.* §§ 22.01, .02(a)(2). Both theories were submitted to the jury.

For a weapon to be deadly requires only that it be used in a manner capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17)(B); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The statute does not require that the actor actually intend death or serious bodily injury. *McCain*, 22 S.W.3d at 503. It is sufficient that the actor uses or intends to use the object in a manner capable of causing death or serious bodily injury. *Bailey v. State*, 38 S.W.3d 157, 158-59 (Tex. Crim. App. 2001).

Here, appellant hit Otto with a tool, bar, or other hard object. Otto was unable to identify the object because, he testified, appellant attacked him. No weapon was introduced into evidence at trial. The resulting blow caused Otto to fall back and see "gray." He experienced pain and a laceration requiring five staples. The investigating officer testified that Otto was bleeding from his head when the officer arrived approximately seven minutes after he was dispatched to the scene. The officer testified that, in his experience, he has observed that hard objects can cause serious bodily injury and even death. Otto was still bleeding when he arrived at a hospital a half hour later. The doctor applied a pressure dressing for fifteen minutes to stop the bleeding after the laceration had been stapled. Otto testified that he had and continues to have long-term effects from the head

5

wound, including speech difficulties and loss of memory. He acknowledged that the symptoms started six months after the incident.

After reviewing the record in a light most favorable to the verdict, we hold that the evidence was legally sufficient to support both the serious bodily injury and deadly weapon elements of the offense. Likewise, after a neutral review, we conclude that the proof of guilt is not so obviously weak as to undermine confidence in the fact finder's determination of the proof of guilt. Sufficient evidence was presented that appellant used a deadly weapon. Otto received blunt force trauma to his head. Otto testified that appellant struck his head with a hard object and that he saw appellant with a pipe or bar in his hands. Null also observed appellant with something like a "jack handle" in his hands. In determining whether appellant sustained a serious bodily injury or a bodily injury caused by the use of a deadly weapon, the jury may consider all the facts of the case. *Bethel v. State*, 842 S.W.2d 804, 807 (Tex. App.—Houston [1st Dist.] 1992, no pet.). Additionally, the jury may affirmatively find that a deadly weapon was used even if the object was not identified. *See, e.g., Gordon v. State*, 173 S.W.3d 870, 873 (Tex. App.—Fort Worth 2005, no pet.). Further, the presence and severity of wounds on the injured party are factors to be considered in determining whether an object was used as a deadly weapon. *Bethel*, 842 S.W.2d at 807. Viewing the evidence in a neutral light, we conclude that a reasonable juror could have found by the presence and severity of Otto's injuries that he suffered serious bodily injury and that appellant did in fact use a deadly weapon as described by the witnesses. Giving due deference to the jury's verdict, we further conclude that the evidence contrary to the verdict is not strong enough that the beyond-a-reasonable-doubt standard was not met and the evidence was not such that it is manifestly unjust, shocks the conscience, or

6

clearly demonstrates bias. The evidence is factually sufficient to support appellant's conviction for the offense of aggravated assault.

In his final issue, appellant complains that the prosecutor commented on appellant's failure to testify and thereby violated his Fifth Amendment right against self-incrimination. The State responds that appellant gave inconsistent statements to various witnesses, including Null and the cashier, and the prosecutor was commenting on the inconsistency of these statements. Appellant made no objection to the prosecutor's comments.

During the guilt/innocence phase of trial, after referencing Null's testimony, the prosecutor made the following comments:

> And there is an obvious point of [common] sense here where we—I mean, how many of you have been injured or struck at some point in your life? Okay. Does it gush like a fountain or does it swell and start bleeding and maybe get worse over time until it's treated?
>
> We don't see any behavior on the part of the defendant afterwards of protest. We don't see him, "This is a false arrest. What are you doing? I didn't do anything." Nothing like that coming out of the defendant.
>
> And out of the victim, "He hit me." He's bleeding profusely. And then what about—remember what Null said? Null actually corroborated—actually supported what the victim said. He didn't see the assault occur. . . . And he sees [appellant] with the hard object still in his hand, going towards Donald Otto.

Prosecutorial comment that refers to an accused's failure to testify violates the accused's Fifth Amendment right against compelled self-incrimination. *See Griffin v. California*, 380 U.S. 609 (1965); *Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). The comment must clearly refer to the accused's failure to testify, and it is not sufficient that the comment might be construed as an implied or

indirect allusion. *Bustamante*, 48 S.W.3d at 765. The test is whether the prosecutor manifestly intended his language to be such a comment, or whether the language was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Canales*, 98 S.W.3d at 695; *Bustamante*, 48 S.W.3d at 765. Such a comment also violates a mandatory statute. *See* Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005); *Montoya v. State*, 744 S.W.2d 15, 34 (Tex. Crim. App. 1987). Similarly, to constitute a violation of article 38.08, the language used must be either manifestly intended, or of such character, that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Cockerham v. State*, 729 S.W.2d 742, 746 (Tex. Crim. App. 1987).

But, as with nearly all claims of error, when there is no objection to argument, this type of complaint is not preserved for appellate review. Tex. R. App. P. 33.1; *see Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *Berrett v. State*, 152 S.W.3d 600, 603 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Accordingly, we do not address the argument on its merits. We observe, however, that counsel may not have objected because the comment was at most an indirect reference and not of such a character that the jury would necessarily take it as a comment on the defendant's failure to testify.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   October 3, 2006

Do Not Publish