TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00205-CR






Michael Richard Ewing, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT

NO. CR-02-073, HONORABLE RONALD G. CARR, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N


 Michael Richard Ewing appeals from a conviction by a jury of the offense of
aggravated assault with a deadly weapon. See Tex. Pen. Code Ann. § 22.02 (West Supp. 2006). (1) 
The jury assessed punishment at twenty years' imprisonment. Appellant contends on appeal that the
evidence is legally and factually insufficient to support his conviction and that the trial court erred
in allowing the prosecutor to comment on appellant's failure to testify. We affirm the judgment of
the trial court.


BACKGROUND

 At trial, the evidence revealed that the complainant, Donald Otto, and appellant were
truck drivers who worked for a highway construction hauling company. On January 16, 2002, they
were driving from San Marcos to Orange, Texas, in a four-truck convoy with an oversized load of
bridge components. Otto was placed in charge of the convoy with specific instructions from the
company's owner to assist a new driver, Jason Null, who was a part of the convoy. Otto appointed
appellant to be the lead driver in the convoy.

 As the truck drivers drove to Orange, Otto attempted to instruct and provide guidance
to Null. Otto testified that, at various times, appellant tied up their radio communications with non-job-related talk, and Otto was unable to communicate with Null. At one point, because appellant
was on the radio, Otto was unable to direct Null in negotiating a difficult turn. Null's trailer went
off into a ditch, and he knocked down a stop sign. Otto reminded appellant to keep the radio free
for job-related communications, particularly for the new driver. At other points in their trip, Otto
had a minor collision that he blamed on appellant, and appellant later pulled off the road to attend
to his vehicle, but failed to follow company procedures.

 When the drivers returned to San Marcos that night to prepare to pick up another load
for delivery the next morning, Otto approached appellant to advise him that appellant would not be
leading the convoy the next day. Otto testified, "The day was a disaster. [Appellant] had problems
with his truck and--and he just didn't use good common sense." Appellant was standing next to his
truck and working with his toolbox when Otto gave him his assignment for the next day. Otto
testified that he told appellant "you need to find yourself a place in the back of the line." Otto
recalled the problems they had encountered throughout the day and told appellant that he was "not
lead truck material."

 Appellant suddenly struck Otto on the head with a hard object, causing him to almost
fall. Otto did not see what object appellant hit him with, but he immediately felt that his head was
wet and that he was hurt. Otto yelled at another driver to call 9-1-1. Otto testified that appellant
continued to pursue him after the initial attack:


 [H]e's still got this pipe or bar or whatever he had in his hand is still in his hand. All I see
is this glazed look in his eyes and he's coming after me. And I'm like--you know, so I
dodge--I dodge underneath the trailer to the other side. And he walks around to the other
side and he's after me. You know, I don't know why, but he's after me. And so he steps to
this side and I duck back under. And I'm still on the phone and trying to give directions, and
holding this and watching my butt so I don't get smacked again. And I duck underneath the
trailer again. This happened probably four or five times and then I don't know what
happened to him.



Appellant disputed Otto's account, his counsel arguing that appellant was defending himself and
only trying to get Otto's hands off of him. Two other witnesses testified that appellant
acknowledged striking Otto. A cashier at a truck stop who knew both Otto and appellant testified
that she asked appellant why he "hit" and "hurt" Otto. She testified that appellant responded that
Otto had "grabbed my bandana." Jason Null testified that appellant told Null that he hit Otto. Null
testified that when the police arrived he overheard appellant tell an officer that Otto had hit his head
on appellant's truck.

 Appellant was arrested shortly after the altercation. He was indicted, and a jury found
him guilty of aggravated assault.




ANALYSIS

 Appellant contends that the evidence is legally and factually insufficient to support
his conviction because there was no evidence that (I) Otto suffered a serious bodily injury or (ii) the
offense was committed with a deadly weapon.

 In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). 
In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party. Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim.
App. 2004). While we may disagree with the jury's conclusions, we must also exercise appropriate
deference to avoid substituting our judgment for that of the jury, particularly in matters of credibility. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). We may find the evidence to be
factually insufficient if the evidence supporting the finding, considered alone, is too weak to support
the jury's finding beyond a reasonable doubt, or the contravening evidence is so strong that the State
could not have met its burden of proof. Drichas, 175 S.W.3d at 799; Zuniga, 144 S.W.3d at 484-85.

 A person commits the offense of aggravated assault when the person commits an
assault, and either (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon
during an assault. Tex. Pen. Code Ann. § 22.02(a). "Serious bodily injury" means "bodily injury
that creates a substantial risk of death or that causes . . . protracted loss or impairment of the function
of any bodily member or organ." Id. § 1.07(a)(46) (West Supp. 2006). A "deadly weapon" is
"anything that in the manner of its use or intended use is capable of causing death or serious bodily
injury." Id. § 1.07(a)(17)(B). Thus, the offense is committed by a person either causing serious
bodily injury to another or using or exhibiting a deadly weapon during the assault. When a deadly
weapon is used in the assault, the offense does not require proof of a "serious bodily injury" but
requires proof only of a "bodily injury." Id. §§ 22.01, .02(a)(2). Both theories were submitted to
the jury.

 For a weapon to be deadly requires only that it be used in a manner capable of causing
death or serious bodily injury. Id. § 1.07(a)(17)(B); McCain v. State, 22 S.W.3d 497, 503 (Tex.
Crim. App. 2000). The statute does not require that the actor actually intend death or serious bodily
injury. McCain, 22 S.W.3d at 503. It is sufficient that the actor uses or intends to use the object in
a manner capable of causing death or serious bodily injury. Bailey v. State, 38 S.W.3d 157, 158-59
(Tex. Crim. App. 2001).

 Here, appellant hit Otto with a tool, bar, or other hard object. Otto was unable to
identify the object because, he testified, appellant attacked him. No weapon was introduced into
evidence at trial. The resulting blow caused Otto to fall back and see "gray." He experienced pain
and a laceration requiring five staples. The investigating officer testified that Otto was bleeding from
his head when the officer arrived approximately seven minutes after he was dispatched to the scene. 
The officer testified that, in his experience, he has observed that hard objects can cause serious
bodily injury and even death. Otto was still bleeding when he arrived at a hospital a half hour later. 
The doctor applied a pressure dressing for fifteen minutes to stop the bleeding after the laceration
had been stapled. Otto testified that he had and continues to have long-term effects from the head
wound, including speech difficulties and loss of memory. He acknowledged that the symptoms
started six months after the incident.

 After reviewing the record in a light most favorable to the verdict, we hold that the
evidence was legally sufficient to support both the serious bodily injury and deadly weapon elements
of the offense. Likewise, after a neutral review, we conclude that the proof of guilt is not so
obviously weak as to undermine confidence in the fact finder's determination of the proof of guilt. 
Sufficient evidence was presented that appellant used a deadly weapon. Otto received blunt force
trauma to his head. Otto testified that appellant struck his head with a hard object and that he saw
appellant with a pipe or bar in his hands. Null also observed appellant with something like a "jack
handle" in his hands. In determining whether appellant sustained a serious bodily injury or a bodily
injury caused by the use of a deadly weapon, the jury may consider all the facts of the case. Bethel
v. State, 842 S.W.2d 804, 807 (Tex. App.--Houston [1st Dist.] 1992, no pet.). Additionally, the jury
may affirmatively find that a deadly weapon was used even if the object was not identified. See, e.g.,
Gordon v. State, 173 S.W.3d 870, 873 (Tex. App.--Fort Worth 2005, no pet.). Further, the presence
and severity of wounds on the injured party are factors to be considered in determining whether an
object was used as a deadly weapon. Bethel, 842 S.W.2d at 807. Viewing the evidence in a neutral
light, we conclude that a reasonable juror could have found by the presence and severity of Otto's
injuries that he suffered serious bodily injury and that appellant did in fact use a deadly weapon as
described by the witnesses. Giving due deference to the jury's verdict, we further conclude that the
evidence contrary to the verdict is not strong enough that the beyond-a-reasonable-doubt standard
was not met and the evidence was not such that it is manifestly unjust, shocks the conscience, or
clearly demonstrates bias. The evidence is factually sufficient to support appellant's conviction for
the offense of aggravated assault. 

 In his final issue, appellant complains that the prosecutor commented on appellant's
failure to testify and thereby violated his Fifth Amendment right against self-incrimination. The
State responds that appellant gave inconsistent statements to various witnesses, including Null and
the cashier, and the prosecutor was commenting on the inconsistency of these statements. Appellant
made no objection to the prosecutor's comments.

 During the guilt/innocence phase of trial, after referencing Null's testimony, the
prosecutor made the following comments:


 And there is an obvious point of [common] sense here where we--I mean, how many of you
have been injured or struck at some point in your life? Okay. Does it gush like a fountain
or does it swell and start bleeding and maybe get worse over time until it's treated?


 We don't see any behavior on the part of the defendant afterwards of protest. We don't see
him, "This is a false arrest. What are you doing? I didn't do anything." Nothing like that
coming out of the defendant.


 And out of the victim, "He hit me." He's bleeding profusely. And then what
about--remember what Null said? Null actually corroborated--actually supported what the
victim said. He didn't see the assault occur. . . . And he sees [appellant] with the hard object
still in his hand, going towards Donald Otto.



 Prosecutorial comment that refers to an accused's failure to testify violates the
accused's Fifth Amendment right against compelled self-incrimination. See Griffin v. California,
380 U.S. 609 (1965); Canales v. State, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003); Bustamante v.
State, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). The comment must clearly refer to the accused's
failure to testify, and it is not sufficient that the comment might be construed as an implied or
indirect allusion. Bustamante, 48 S.W.3d at 765. The test is whether the prosecutor manifestly
intended his language to be such a comment, or whether the language was of such a character that
the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. 
Canales, 98 S.W.3d at 695; Bustamante, 48 S.W.3d at 765. Such a comment also violates a
mandatory statute. See Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005); Montoya v. State, 744
S.W.2d 15, 34 (Tex. Crim. App. 1987). Similarly, to constitute a violation of article 38.08, the
language used must be either manifestly intended, or of such character, that the jury would naturally
and necessarily take it to be a comment on the defendant's failure to testify. Cockerham v. State, 729
S.W.2d 742, 746 (Tex. Crim. App. 1987).

 But, as with nearly all claims of error, when there is no objection to argument, this
type of complaint is not preserved for appellate review. Tex. R. App. P. 33.1; see Wead v. State, 129
S.W.3d 126, 130 (Tex. Crim. App. 2004); Berrett v. State, 152 S.W.3d 600, 603 (Tex.
App.--Houston [1st Dist.] 2004, pet. ref'd). Accordingly, we do not address the argument on its
merits. We observe, however, that counsel may not have objected because the comment was at most
an indirect reference and not of such a character that the jury would necessarily take it as a comment
on the defendant's failure to testify.


CONCLUSION

 Having overruled appellant's issues on appeal, we affirm the judgment of conviction. 






 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: October 3, 2006

Do Not Publish
1. We cite the current version of the statute for convenience, but we note that recent
amendments are not relevant to the issues raised in this appeal.